## Chicago & Eastern Illinois Railroad Company v. Frank Snedaker.

1. CAR COUPLER—*what does not discharge liability for defective.* The fact that the defective car coupler alleged as the proximate cause of the injury was upon a car not owned by the defendant, is immaterial where the car was put upon the regular train of the defendant at a place where it maintained a regular car inspector and car repairer.

2. ASSUMED RISK—*what not, as a matter of law.* Risks encountered by a railroad conductor while performing services outside of his regular duties, necessitated by reason of the illness of his brakeman, are not assumed risks. as a matter of law.

3. VARIANCE—*when objection of, should be raised.* An objection of variance should be raised in the trial court.

4. VERDICT—*one good count sufficient to sustain.* One good count in a declaration is sufficient to sustain a verdict.

Action on the case for personal injuries. Appeal from the Circuit Court of Williamson County; the Hon. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

O. A. HARKER, for appellant; H. T. DICK and E. E. DENISON, of counsel.

WILLIAM A. SCHWARTZ and WILLIAM H. WARDER, for appellee; HOSEA V. FERRELL, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal by the Chicago & Eastern Illinois Rail-

C. & E. I. R. R. Co. v. Snedaker.

road Company to review a judgment for $6,000 obtained. against it by Frank Snedaker, formerly one of its freight conductors, for injuries received while in its service.

The facts in the case, as they appear from the proofs in the record, are substantially as follows: Appellee at the time he was injured, September 7, 1903, was forty-one years of age, had been engaged in railroading for seventeen years, was then, and had been, for about ten months prior thereto, a freight conductor on appellant's train running from Marion to Thebes, Illinois, a distance of about one hundred miles, earning from $120 to $125 a month. Along this line about fifteen miles from Thebes, was a small station called Tamms, where appellant's tracks were crossed by those of the Mobile & Ohio Railroad. At this point appellant in 1901 installed an interlocking switching plant, operated from a tower located on the east side of appellant's tracks near the crossing of the two railroads. From this tower certain rods and wires ran north, along the east side of appellant's tracks, to a point some three hundred feet distant where they turned to the left, crossing the tracks at right angles under the rails and between the ties. The wires were two in number and where they turned to cross the track there was a distance of six feet from the point where they left the pulleys on which they turned to the ties and in that space they stood from six to eight inches above the ground, one of them being a little above the other. After crossing the track the wires extended north on the west side of the track supported by short posts to a semaphore pole some distance away.

Sometime after the interlocking station had been installed, appellant put in a stub or sidetrack along the east side of the main track, commencing twenty-four feet north of the place where the wires crossed the main track. A little further north than the commencement of the sidetrack on the opposite side of the main track, was the water tank. It was the custom of appellee when coming from the north to stop his train at the water tank and walk south to the station, between the tracks where the semaphore wires did not extend above ground.

On the night of the injury, appellee's train, which was behind time, arrived from the north at 11.10 P. M. He had in the train a car to be set on the stub track. The brakeman, who usually did the uncoupling, was sick, the head brakeman had to throw the switch and it was necessary for appellee to uncouple the car himself. The car to be set out was the third one from the engine so the engine and three cars were run south of the switch and then backed up. The coupling appliance which was on the second car, consisted of a lever to which there was attached a short chain, connecting with the lug or pin. Appellee pulled the lever to uncouple the car, but the chain attached to it was too short to permit the lever to come up and fasten or lock up and keep the car uncoupled, and it was therefore necessary for appellee to go along the track beside the moving cars, holding up the lever until the cars should be separated. While he was so engaged, he walked along on the east side of the track toward the switch, holding the lever in his left hand and his lantern in the right hand. When sufficient headway had been obtained to run the car in on the stub track, he gave a stop signal to the engineer with his lantern and while doing so, tripped on the semaphore wires, was thrown down and his left arm so crushed under the cars that amputation was necessary.

Appellee knew of the existence of the wires and that they crossed the track, but did not know their exact location or how high they were from the ground, and at the time he was injured it was not sufficiently light for him to see them.

The first count of the declaration charged negligence in maintaining the rods or wires over which plaintiff tripped, about eight inches above the ground, thereby making the place where plaintiff traveled in the performance of his work in setting out the car on said stub track, dangerous and hazardous; the second, the failure of defendant to keep a conspicuous light at the place where the rods and wires turned to cross the track to warn plaintiff of their location; the third, the failure to have the wires graded over or cov

C. & E. I. R. R. Co. v. Snedaker.

ered by boxing, and the fourth, the use by defendant of cars with defective appliances, brakes, rods, chains and couplings, which required plaintiff to follow along the south side of the moving cars backing in on the stub track to get the car he was required to set out, uncoupled from other cars in the train.

At the close of plaintiff's evidence, the defendant moved the court to instruct the jury to return a verdict of not guilty as to each count of the declaration, upon the ground that the evidence introduced on behalf of the plaintiff, was not sufficient to support the verdict.    Defendant also offered a motion that the court direct a verdict of not guilty on the fourth count, because of a variance between the proofs and the declaration.    The court overruled these motions and they were renewed, in substance, at the close of all the evidence and again overruled.

Appellant insists that the evidence showed no negligence on its part, and that appellee's injury was caused by risks and hazards of his employment which he assumed, making applicable the doctrine of assumed risk.    Evidence was introduced by appellant to show that the interlocking plant at Tamms was properly constructed and maintained; that it was not practical or wise to box or cover over the cross wires in an interlocking switching plant, and that it was the prevailing custom among the leading railroads of the country to have such wires exposed.    On the contrary, appellee introduced evidence to the effect that proper construction demanded the wires, at the place where they turned to cross the track, should have been covered or boxed, so as to prevent persons going along beside the track from tripping over them.    Expert witness Dunham who testified for appellant, stated that on the Illinois Central Railroad there are places where such wires are covered; that these places are street and highway crossings and where pipes or wires pass directly in front of a station platform; that a bridge could be placed over the wires, but that any covering of the wires is objectionable, and if they are covered for any considerable distance the covering interfered;

that whether there should be bridges, depended entirely upon the local conditions. It thus appears that while there was a conflict in the evidence upon the question as to whether covering the semaphore wires for a long distance was practicable and consistent with their proper operation, yet it may fairly be deduced from the evidence on both sides that the wires may be covered for short distances without interfering with their operation. Whether or not the failure of appellant to cover the wires at the point where appellee tripped, was negligence under all the circumstances of this case, was a question of fact for the jury. We may, however, say that it appears to us from the proofs, including an inspection of the photograph in the record, that the jury could not reasonably do otherwise than find appellant guilty of negligence in maintaining said wires at the place where appellee was injured, in their exposed condition after the stub track or switch was established.

That the coupling appliance which appellee was using at the time he was injured was defective, is unquestioned. The car to which it was attached was put in the train in the night time at Cypress, a place where appellant kept a regular car inspector and car repairer, and it is immaterial that such car belonged to another company than appellant. In Sack v. Dolese, 35 Ill. App. 636, it is stated : "The rule is well settled that the employer is bound to use diligence in providing and maintaining safe machinery and instrumentalities to be handled by the employes and that in the operation of cars, a most efficient and perhaps necessary method of discharging that duty is to maintain a careful system of inspection, to see that the necessary appliances in use thereon are in good order, and sufficient to answer the purposes for which they are intended.   *   *   *   That the same rule of reasonable care with reference to proper machinery and inspection, applies in the case of cars belonging to other persons, which the servant is required to operate in the course of the master's business, as governs when the cars are owned and provided by the master him-

self." It was for the jury to say whether, under the circumstances of the case, the uncoupling appliance was unsafe and whether appellant was negligent in its use.

Was the risk of danger which might occur to appellee by reason of the wires one which he assumed as an employee of appellant ?

In C. & E. I. R. R. Co. v. Hines, 132 Ill. 161, which was a suit for damages, resulting from the death of a switchman who, while engaged in coupling cars, caught his foot between two ties of a sidetrack, fell and was run over, the court said in the course of the opinion : "The burden of furnishing safe machinery, appliances, surroundings, etc., is upon the master, and while the master is not to be held liable for defects and dangers of which the servant is fully informed, yet the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings etc., in the absence of notice that there is something wrong in that respect. * * * And necessarily much more is the servant entitled to assume that his master has furnished him with suitable and safe materials, machinery and surroundings, and relieved him of investigation and inquiry in that regard, where, as in the present instance, the performance of his duties requires constancy of attention to other matters. A man whose attention is constantly directed to moving cars and their coupling and uncoupling, cannot possibly give much attention to the ties, switch-bars, etc., over which he may, from time to time, have to pass."

But it is contended that appellee assumed the risk of any injury which might occur to him by reason of the existence of the semaphore wires, for the reason that their location was known to him and that the dangers were obvious. It is true that appellee had passed over the ground between the water tank and Tamms at previous times, but on these occasions he walked between the rails and as the wires were sunk beneath the ties, they did not offer any obstruction. On the night he was injured he was performing a duty out

of his usual line, but which became necessary on account of the illness of one of his brakemen. He was compelled to walk along beside the cars by reason of the defective coupling appliance and with his mind intent upon his work, he was tripped and thrown down by wires maintained by appellant in an exposed condition. Under such circumstances, we cannot say, as a matter of law, that appellee's injuries were caused by a risk which he assumed. Chicago & Alton Railroad Company v. Howell, 109 Ill. App. 546 (208 Ill. 155); Illinois Terminal Railroad Company v. Thompson, 112 Ill. App. 463.

Counsel for appellant complain specially of the action of the court in refusing to direct a verdict for defendant on the fourth count of the declaration, it being alleged there was a variance between that count and the proof given to support it, for the reason that the cause of injury set forth in that count was a defective and unsafe coupling appliance attached to the car which appellee was endeavoring to set out on the stub track, while the proof showed that the appliance was not on the car sought to be set out, but on the car next to it. The count averred that it was the duty of the defendant to use all reasonable care to furnish plaintiff cars with safe appliances, brakes, rods, chains and couplings; that it failed to do so, but on the contrary carelessly and negligently furnished cars with defective appliances, brakes, rods, chains and couplings, which he was required to handle in setting out said car on said stub track. Then follows an allegation in regard to the acts of appellant in setting out the car which apparently refers to the car which was being set out as the one which had the defective appliances and couplings.

It does not appear from the evidence that defendant was surprised by proof that the defective appliances were on the car other than that which was being set out or that his defense was affected in any way by such proof. The evidence bearing upon the question of the defective coupling was not objected to when offered on the trial by appellee, and the fact that the appliance was on the third instead of

C. & E. I. R. R. Co. v. Snedaker.

the second car, does not appear to us to affect the merits of the case.

We are therefore of opinion that the variance, if there was any, was not a material one, but even if it had been so material as to have justified the court in giving the instruction, yet as there was evidence to support the other counts of the declaration, the refusal of the court to give the instruction could not warrant us in reversing the judgment.

In C., W. & V. Coal Co. v. Moran, 210 Ill. 9, where instructions were offered by the defendant and refused, severally stating that plaintiff could not recover under each count, it was said by the court: "There was no evidence tending to sustain the fourth and fifth counts, but the first three counts each stated a good cause of action, and there was evidence tending to sustain them. The court might properly have given the instructions relating to the fourth and fifth counts, but inasmuch as the first three counts each stated a cause of action and the evidence was applicable to them, the refusal of the instructions as to the fourth and fifth is not ground for reversal."

Counsel for appellant also complains that the fourth count could not be sustained for the reason that the coupling appliance was in no sense the proximate cause of appellee's injury. It is true that the exposed wires caused appellee to trip and their existence was a concurring cause in producing the injury, yet it was a proper question to be submitted to the jury whether the defective condition of the coupler was not also an efficient cause of the injury. N. Chicago St. Ry. Co. v. Dudgeon, 83 Ill. App. 528.

Appellant complains of appellee's third instruction, which was given with the object of instructing the jury as to the rules governing in case the jury found that appellant had provided a car with defective chains and couplings to be used by appellee in the performance of his duties and that such chains and couplings were dangerous, on the ground that there was no evidence whatever that the chains and couplings were either defective or dangerous. There was

abundance of evidence in the record tending to show that the chains and coupling were defective and that the use of them was dangerous, and had there not been evidence upon the subject, appellant would have been in no condition to complain for the reason that its twelfth instruction covered the same phase of the case.

The judgment of the court below is affirmed.

*Affirmed.*