CATHERINE. HARNEY, Appellee, *vs.* THE SANITARY DISTRICT OF CHICAGO, Appellant.

*Opinion filed October 28, 1913.*

1. DAMAGES—*amount of damages in action for permanent injury to land from overflow is a question of fact.* In an action for damages for permanent injury to land from overflow the amount of damages sustained is a question of fact for the jury, and the judgment will not be reversed upon the ground that the damages awarded are excessive unless the verdict is palpably the result of passion or prejudice and manifestly against the preponderance of the evidence.

2. SAME—*measure of damages in a suit for permanent injury to land.* The measure of damages in an action to recover for permanent injury to land from overflow, due to the opening of a sanitary district channel, is the difference between the fair cash market value of the land immediately prior to the time the water was turned into the channel and its fair cash value after the channel was opened.

3. INSTRUCTIONS—*what statement in an instruction is unnecessary but harmless.* While the Sanitary District of Chicago must be assumed to know the natural flow of water in the Desplaines and Illinois rivers, yet its liability for permanent damage to land from overflow, due to the opening of its channel, does not depend upon its knowledge or consideration of such natural flow, and a statement in an instruction to the effect the district was bound, to know and consider such condition is unnecessary but not harmful.

4. SAME—*when a party cannot complain that statement in an instruction is not based upon the evidence.* Where both parties

to an action for permanent damage to land from the opening of the channel of the Sanitary District of Chicago assume, in their instructions, that sewage was carried by the channel into the Illinois river, neither party can be heard to complain that there is no direct proof in the record that any sewage passed into the river.

5. SAME—*when failure of an instruction to fix time when fair cash value of land is to be estimated is not fatal.* In an action against the Sanitary District of Chicago for permanent injury to land, the failure of an instruction to definitely fix the time when the fair cash value of the land was to be estimated or the time when the depreciation therefrom should be shown is not fatal, where the instruction states the essential elements of a recovery and the omitted detail is not only an uncontroverted point in the case but is accurately set out in other instructions.

6. EVIDENCE—*maps, plats and gauge readings from the war department are not incontrovertible evidence.* Maps, plats and gauge readings from the records of the war department of the United States, even though they may be competent evidence tending to show the stage of water in the streams to which they refer, are merely evidence to be considered with all the other evidence in the case and are not incontrovertible proof of the facts which they tend to establish.

APPEAL from the Circuit Court of Marshall county; the Hon. T. N. GREEN, Judge, presiding.

FRANK J. QUINN, and JOHN DAILEY, (EDMUND D. ADCOCK, and WALTER E. BEEBE, of counsel,) for appellant.

BARNES & MAGOON, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Marshall county entered in favor of Catherine Harney, against the Sanitary District of Chicago, for permanent damages resulting to certain lands of appellee by reason of the construction and putting in operation the sanitary district channel on January 17, 1900. The lands involved are a sixty-eight acre tract, being one full forty-acre tract and twenty-eight acres off the east side of another forty ad-

joining it on the west. The lands are situated along what is known as the Lacon and Sparland road, which leads from the town of Sparland to a bridge across the Illinois river and thence to the town of Lacon. The twenty-eight acre tract is improved with a two-story brick house, two corn-cribs and a chicken house. The improvements are located about two blocks east of a railroad depot and elevator in Sparland. The forty-acre tract is immediately east of the twenty-eight acres, and its eastern boundary is about one-half mile from the Illinois river. The lands were all fenced and under cultivation except a few acres along the east side, on which some willows were growing. The cultivated lands were well adapted to the growth of corn, oats and wheat. Appellee became the owner of these lands in 1895. She rented the lands until 1899, at which time she and her husband, William Harney, moved onto the farm and commenced to cultivate it. On January 17, 1900, the appellant turned into the Illinois river the waters of Lake Michigan and the sewage of the city of Chicago. The claim upon which appellee bases her right to recover damages is, that the effect of turning the waters of Lake Michigan into the Illinois river through the sanitary district channel was to raise the level of the water in the Illinois river to a higher level than it would be in a state of nature, thus causing the river to back out into Gimlet creek, overflowing its banks and spreading over appellee's lands. While there were other pleas, the only controverted issue is that formed by appellant's plea of not guilty. The jury assessed appellee's damages at $3000, and judgment for that amount was rendered upon the verdict.

Appellant limits its brief and argument to three questions: (1) That the verdict is excessive and against the weight of the evidence; (2) that the court gave improper instructions on behalf of plaintiff; and (3) that appellee's counsel were guilty of improper conduct in the course of the trial.

The evidence shows that appellee's land is what is considered first-class corn land, and that it produced corn crops ranging from 50 to 100 bushels per acre, from 50 to 70 bushels of oats and as high as 40 bushels of wheat to the acre. These lands produced good crops regularly prior to the year 1900. Since the water was turned into the sanitary district channel a very considerable portion of these lands has been inundated, so that a very small portion has been fit for cultivation. There is an attempt made by appellant to show that a portion of these lands was subject to overflow prior to the year 1900, and that the increased inundation since that time was due to causes other than the turning of water into the Illinois river by the sanitary district. It is not seriously controverted that appellee's lands have been greatly depreciated since the opening of the sanitary district channel. The cause and extent of this depreciation were controverted questions of fact before the jury. Without going into the testimony in detail, it may be observed that a large number of farmers residing within the neighborhood of the lands in question testified that prior to 1900 substantially all of the lands involved produced large crops of corn and other products. These witnesses state that 80 and 90 bushels, and as high as 100 bushels, of corn per acre was grown on these lands prior to 1900; that while some of the land was subject to overflow in early spring the water did not seriously interfere with the planting and cultivation of crops; that the water had never been known to be over any considerable portion of this land as late as June prior to 1900. Many of these witnesses testify that since the waters of the sanitary district were turned into the Illinois river such waters were caused to back into Gimlet creek and overflow its banks, and that as a result the mouth of the creek has gradually filled up with logs and silt, so that the creek no longer furnishes an adequate outlet for the drainage of surface water from these lands. The great weight of the testimony shows

that prior to 1900 Gimlet creek formed an outlet and drainage for a considerable scope of country, including the lands in controversy, and that appellee's lands were never injured by overflow from the creek prior to 1900. There is the usual conflict in the opinions of witnesses as to the extent of the depreciation in the value of appellee's lands after the waters from Lake Michigan were turned into the Illinois river, in 1900. Appellee offered testimony showing the value of this land per acre prior to 1900 and immediately after the opening of the sanitary district channel. These witnesses placed the value of the land before at from $100 to $125 per acre, and after the water was turned into the channel at from $30 to $50 per acre. Upon this point appellant pursued a somewhat different line of inquiry. The witnesses for appellant were asked to state what the value of these lands was prior to the opening of the sanitary district channel. They estimated the lands to be worth from $25 to $50 per acre. They were not asked what they were worth after the opening of the sanitary district channel. The testimony as to the character of crops grown on this land prior to 1900 was not disputed. With this evidence undisputed, it is not surprising that the jury did not base their verdict on the opinions of witnesses who thought that land that would produce 80 to 100 bushels of corn per acre was only worth $25 or $30 per acre. The verdict of the jury fixed the amount of the depreciation at about $45 per acre of the entire tract. This estimate is well within the range of the testimony. The amount of damages in cases of this character is not susceptible of exact measurement. It must be determined from the opinions of witnesses, which vary widely. The amount of damages to be recovered is a question of fact to be determined by the jury, (*City of Salem* v. *Harvey*, 129 Ill. 344,) and this court has often said that a judgment will not be reversed on the ground that the damages are excessive unless they are palpably and clearly the result of passion or prejudice or manifestly con-

trary to the preponderance of the evidence. (*Lauth* v. *Chicago Union Traction Co.* 244 Ill. 244.) Under all of the circumstances, the verdict in this case is not so large as to lead to the inference that the jury were influenced by passion or prejudice, or other improper consideration, in reaching their conclusion.

Appellant complains of instructions Nos. 5, 6, 12, 13 and 14 given on behalf of appellee. Instruction No. 5 informed the jury that the statute under which appellant was organized made it liable for all damages to real estate which is overflowed or otherwise damaged by reason of the construction and operation of any channel, ditch, drain or outlet under the statute, and further advised the jury that if the greater weight of the evidence showed that the lands in question belonged to appellee in 1900 and that the same were overflowed or otherwise damaged to any extent prior to the commencement of the suit, as charged in the declaration, and were thereby decreased in their cash market value, then the jury should find appellant guilty. The criticism made upon this instruction is, that since it concludes with the direction to find the defendant guilty, the instruction is faulty because it does not contain all of the facts which must be proven in order to warrant a verdict against appellant. In support of this objection it is pointed out that the instruction does not state the time when a fair cash market value is to be estimated or when the depreciation therefrom shall be shown. This being a suit for permanent injury to real estate, the measure of damages is the difference between the fair cash value of the land immediately prior to the time the water was turned into the sanitary district channel and its fair cash value after the channel had been opened. There was no disagreement between counsel either as to the true measure of damages or in respect to the time when the question was to be determined. The instruction under consideration might have gone a little more into detail and fixed the date when the decrease in the fair cash

market value of the land was to be determined, but inasmuch as this point was not controverted and was fully and accurately stated in a number of other instructions in the series, the omission to insert it in this instruction could not have misled the jury. The instruction does not belong to that class of instructions which have often been condemned by this court, which conclude with a direction to find a particular verdict without requiring proof of all essential facts upon which such verdict must rest. Here the necessary elements to a right of recovery are stated, and the complaint is that they are not stated with sufficient particularity. Where the essential elements of recovery are stated in general terms it will be sufficient if other instructions in the series supply the omitted details, so as to preclude the possibility of the jury being misled in their application of such general language. The question to be determined is whether the instruction complained of, when fairly construed, may have misled the jury. As this case was submitted it does not seem to us possible that the instruction under consideration could have had such effect.

The sixth instruction is as follows:

"The jury are further instructed that in exercising the rights and powers granted to it the defendant is bound to take in consideration the natural flow of water in the Desplaines and Illinois rivers, and if you believe, from the greater weight of evidence, the lands in question in this case, or some part of them, have been damaged and injured by an increased flow of water and sewage in the Illinois river due to the water and sewage turned therein from the sanitary district canal, if the same is proven, and the said lands were at the time the lands of the plaintiff, then the defendant is liable for such damages, if any such are shown, by the greater weight of the evidence, to have resulted to the fair cash market value of said lands from such increased volume of water and sewage, caused by the sanitary district as aforesaid, if the same is proven as above required."

It is first objected that this instruction is argumentative. Apparently this objection is made to the first sentence of the instruction, wherein the jury are advised that appellant is bound to take into consideration the natural flow of water in the Desplaines and Illinois rivers, etc. Appellant must be assumed to know that the Desplaines and Illinois rivers have a natural flow of water which comes to those channels in a state of nature, but since the liability did not depend on appellant's knowledge or consideration of the natural flow of water in these streams, the statement in the instruction calling attention to that fact was unnecessary. We can not, however, see that any harm could result from the reference to this irrelevant circumstance.

It is next objected that the instruction refers to sewage turned into the sanitary district canal, and it is said that there was no evidence that any sewage was carried by said channel to the Illinois river. Instructions Nos. 28 and 31 given on behalf of appellant refer to the flowage of "water and sewage" in the sanitary district canal, and the same reference was also made in appellant's instruction No. 30. Whether there was any direct proof that sewage from Chicago passed through the sanitary district canal is unimportant, since both parties assumed the existence of the fact in the instructions offered by each. A party cannot complain of a fault in an instruction where the instructions of the complaining party are open to the same criticism.

The third objection made to this instruction is, that it fixes no time when the market value of the land is to be estimated. This is the same objection that has been considered in discussing instruction No. 5, and what has already been said in considering that instruction disposes of the third objection to instruction No. 6.

In order to show the stage of the water in the Illinois river at various times and what portion of the lands in controversy would be inundated at various stages of water, appellant introduced maps and plats and gauge readings

taken from the records of the war department at Washington, D. C. The purpose of introducing these records was to prove the effect that the water coming from the sanitary district channel had produced upon appellee's lands. Instructions Nos. 12, 13 and 14 given on behalf of appellee refer to these records, and the substance of the instructions is, that if the jury believe, from a preponderance of all the evidence, that the appellee had made out her case and was entitled to recover, they should find the verdict for her, notwithstanding the maps, and marks and figures thereon, and gauge readings, might be contrary to the preponderance of the evidence. In other words, the instructions advise the jury that this evidence coming from the records of the war department was not conclusive; that it was simply evidence to be considered in connection with all the other evidence of the case in arriving at a verdict. The criticism made upon these three instructions is, that they, in effect, take from the consideration of the jury the evidence referred to. We do not agree with this view. While the records referred to were competent testimony and entitled to consideration, yet they are not incontrovertible proof of the facts recited.

It is also said by appellant in its argument upon these instructions that they invade the province of the jury, and, in effect, advise the jury that the evidence referred to is not entitled to any weight. In our opinion the instructions were not subject to this construction. Appellee was apparently apprehensive that the jury might be inclined to give undue weight to these official documents and to disregard all other evidence in the record that did not agree therewith, and it was evidently to meet this possible view that the instructions in question were given. No witness testified to the accuracy of these official records, nor is there any statute, so far as we are advised, that makes them conclusive of the matters contained therein. The evidence shows that a part of these records were made, in the first instance, un-

der the authority of the Illinois and Michigan canal commissioners, by employees of the State of Illinois, and were afterwards copied by employees of the Federal government and made a part of a report to Congress in connection with an investigation made for the purpose of determining the feasibility of a deep waterway from Lockport to St. Louis. Conceding that records thus made are competent evidence they are not absolutely conclusive of the matters therein contained, and it was not improper for the court to so advise the jury, which is the effect of the instructions complained of.

Appellant complains of statements made by counsel for appellee in the opening statement and in his closing argument to the jury, and also of repetitions of certain questions to witnesses after the court had sustained objections to the questions.  Some of these complaints are not wholly unfounded. Appellant interposed objections, and they were sustained by the court and counsel were admonished to keep within the rules of legitimate argument.  The rulings of the court upon these objections were proper.  Had the court overruled the objections and permitted the improper line of argument to stand before the jury with the approval of the court, a somewhat different question would be presented.  While we are not prepared to say that misconduct of counsel might not be so flagrant as to warrant a reversal notwithstanding the rulings of the court were correct, we do not regard the case at bar as one of that character, and while we cannot approve the action of counsel for appellee in every respect, we do not think that it was so prejudicial as to require a reversal of a judgment which is otherwise free from error.

Finding no reversible error in this record the judgment of the circuit court is affirmed.      *Judgment affirmed.*