ESTELLA J. COLLINS, Appellee, *vs.* THE SANITARY DIS-
TRICT OF CHICAGO, Appellant.

*Opinion filed October 27, 1915—Rehearing denied Dec. 9, 1915.*

1. PLEADING—*when amendment by changing date in a declaration is authorized.* Where a declaration in an action for damages against a sanitary district alleges, under a *videlicet*, the plaintiff's ownership of the land on March 1, 1904, and that "on, to-wit, that day, and for a long time before that date," the defendant constructed the ditches which caused the overflow, the court may allow the declaration to be amended by making the date alleged in the declaration January 17, 1900.

2. DEEDS—*when remainder is contingent.* Where a deed conveying a life estate expressly provides that at the death of the life tenant the land shall go to and vest in the child or children or descendants of children, if any, who survive the life tenant, the remainder is contingent until the termination of the life estate, but the fee remains in the grantor, subject to being divested by the happening of the contingency, and at her death, intestate, the reversion in fee descends to her heirs.

3. EVIDENCE—*when depositions are too remote to be admissible.* In an action for damages against a sanitary district for overflowing land, where witnesses testify as to the condition and value of the land in the year 1900, depositions of the same witnesses, taken in the year 1880, in support of a claim for damages to the same land from the construction of a dam, are too remote to be admissible to impeach or contradict the witnesses.

4. SAME—*when elevator books are not admissible.* In an action for damages to 577 acres of land due to overflow from the construction and operation of a sanitary ditch, books kept by an elevator firm at which the plaintiff's tenants delivered corn from the time of the alleged damage to the time of the trial are not admissible at the instance of the defendant as tending to show the amount of corn raised, where the plaintiff owned over 1000 acres of land and there is no way of determining what part of the corn delivered was raised on the land in controversy.

5. APPEALS AND ERRORS—*when judgment will not be reversed on ground damages are excessive.* A judgment in a suit at law where the damages are not susceptible of exact computation but must be determined from the testimony and opinions of the witnesses will not be reversed upon the ground that the damages are excessive, unless the verdict is clearly the result of passion or prejudice or manifestly contrary to the evidence.

6. SAME—*when misconduct of counsel will not reverse.* Improper remarks and misconduct of counsel in a suit for damages will not justify a reversal unless their effect is clearly prejudicial to the defeated party, particularly where the verdict does not appear from the evidence to be excessive.

APPEAL from the Circuit Court of Marshall county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

EDMUND D. ADCOCK, and FRANK J. QUINN, (JOHN DAILEY, and WALTER E. BEEBE, of counsel,) for appellant.

J. L. O'DONNELL, and BARNES & MAGOON, (WALLACE J. BLACK, of counsel,) for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an action for damages brought by plaintiff below, appellee here, against the Sanitary District of Chicago, appellant, for overflowing and submerging land alleged by appellee to be owned by her. Appellee recovered a judgment for $17,729.14, and the defendant below has appealed direct to this court as a freehold is involved under the pleadings in the case.

The suit was begun January 12, 1905. The original declaration consisted of three counts. The first count alleged that on, to-wit, the first day of January, 1904, the plaintiff was the owner and possessed of the land described, and that on, to-wit, the day and year last aforesaid, and divers other days prior thereto, defendant did the acts complained of, by means of which plaintiff's lands were overflowed and damaged. The second count alleged that on, to-wit, the first day of March, 1904, plaintiff was and had been the owner of the lands described for more than two years before that date, and that on, to-wit, that day, and for a long time before that date, the defendant had constructed the ditches, drains, channels and embankments which caused plaintiff's lands to be overflowed, submerged and damaged. The third count

alleged that on, to-wit, July 1, 1903, plaintiff owned the lands described and for a long time before that time had used and enjoyed the same for farming purposes; that on, to-wit, the date last aforesaid, the defendant owned and possessed certain channels, ditches, levees, drains and gates which it had constructed; that before that time defendant had removed earth and rock for the purpose of diverting the waters of Lake Michigan into channels where they had not up to that time flowed, by means of which the plaintiff's lands were overflowed, submerged and damaged. Additional counts were filed, but as they were taken out of the case before its submission to the jury they need not be set out and discussed.

On January 20, 1914, by leave of court, the plaintiff amended her declaration by changing the dates set out in the original declaration to January 17, 1900. To the declaration as amended the defendant pleaded the general issue; also that plaintiff was not the owner and lawfully possessed of the land at the time of the commission of the grievances mentioned in the declaration, and a separate plea of the five year Statute of Limitations to each of the three counts.

It is first contended by appellant that the amendment of January 20, 1914, changing the date from 1904 and 1903, as originally alleged, to January 17, 1900, was the statement of a new and different cause of action, and that the court erred in not taking the case from the jury for that reason, on motion of the appellant. The only change made by the amendment was to substitute the date January 17, 1900,—that being the day the water was turned into the channel by the trustees of the sanitary district,—for the dates mentioned in the original declaration. The allegations as to the plaintiff's right, the wrongs committed by the defendant and the character and extent of the injury caused thereby remain the same as in the original declaration. The original declaration was filed within five years of January 17, 1900, and informed defendant that plaintiff claimed its acts, which

are set out fully in each count, had damaged her land. The second count alleged, in substance and effect, that she owned the land the first day of March, 1904, and had owned it for more than two years before that date; that defendant on that day and year, and for a long time before that date, had constructed drains, ditches, etc., which overflowed and damaged her lands. That count does not limit either the date of plaintiff's ownership or of the commission of the grievances alleged, to the precise date·named in the declaration. The date was alleged under a *videlicet,* and plaintiff was not confined to proof of the particular date alleged. (1 Chitty's Pl. 318; *Brown* v. *Berry,* 47 Ill. 175; *Long* v. *Conklin,* 75 id. 32.) Under that count as originally filed plaintiff could have proved her ownership and the date of the commission of the grievances at any time within the period of the Statute of Limitations. We do not wish to be understood as intimating a different view as to the first and third amended counts, but even if they were subject to the objection raised, the second count, if supported by proof, would sustain the verdict and judgment. *Scott* v. *Parlin & Orendorff Co.* 245 Ill. 460.

The declaration counted on damages to 1038 acres of land. A part of this land was by the action of the court and part by the action of plaintiff taken out of the case before the cause was submitted to the jury. But 577 acres remained in the case, and the question of damages to that amount of land was submitted to the jury. Of the land considered by the jury 400 acres were in sections 15 and 22 and are referred to in the record as pasture land, except 80 acres thereof, and for convenience we will hereafter refer to said 400 acres as pasture land. In sections 14 and 23 are 177 acres, lying immediately west of a north and south road, called the Lacon and Spring Bay road. This is called the Babb land and joins the pasture land on the east. The pasture land lies between the Babb land and the Illinois river and close to the river. The court held that plaintiff was the

owner, on January 17, 1900, of a life estate in the undivided one-half of the 400 acres of pasture land and of the fee in the other undivided one-half of said land, and that she owned an estate in the undivided one-half of the Babb land for the life of her sister, Eliza, and a fee in the other undivided one-half of said land. The jury were instructed to assess the damages upon that basis of ownership, and appellant contends that this was erroneous.

The 177 acres of land in sections 14 and 23 belonged to Benjamin Babb in his lifetime. He died intestate in 1868, leaving his widow, Nancy, and the appellee and her sister, Eliza Babb, (afterwards Eliza Porter,) his only children and heirs-at-law. After their father's death appellee and her sister, Eliza, conveyed their interest and title to their mother, who subsequently married Wesley Meyers. After her marriage she and her husband conveyed to appellee and her sister, Eliza, by separate deeds, each a life estate in the undivided one-half of said land upon the terms, conditions and limitations mentioned in the deeds, with power to dispose of any of it by will in fee simple. The deeds to each of the daughters were alike with the exception hereafter noted, and it will be unnecessary to set out the substance of the conditions in both deeds. By the conveyance to Eliza the deed provided that at her death without having disposed of the land by will it should "go to and vest in" any child or children surviving her, the child or children of a deceased child to take the share the parent would have taken if living, and upon the death of Eliza without children or descendants of children and without having devised the land it should go to Estella, if then living, and at her death the fee simple should "go to and vest in" her surviving children, the descendants of a deceased child to take the parent's share, and if she left no child or grandchild surviving her, then the fee simple should go to her heirs-at-law who were heirs by blood. In the event of the death of both Eliza and Estella, neither leaving a child or descendants of a child, the fee

should go to and vest in the heirs by blood of Eliza. By the deed to Estella she was given power and full right to sell and convey the fee to her sister, Eliza, or to any other person, upon her mother joining her in the deed. This latter provision was not in the deed to Eliza. In 1884 Eliza conveyed her interest in the Babb land to appellee. Nancy Meyers owned in her own right the 400 acres of pasture land in sections 15 and 22. In 1884 she and her husband conveyed said 400 acres to appellee during her life and at her death the title in fee to vest in any child or children then surviving her, the child or children of a deceased child to take the share the parent would take if then living. In the event appellee died leaving no child or descendant of any child to take said lands the title in fee simple was to vest in Eliza, and in case of her death, in her then surviving legal heirs. The grantor reserved power and right to sell and convey the land in fee during her life or to dispose of it by will. The grantee was not to sell or dispose of the premises during the life of her mother, the grantor. Subject to these limitations she was given power to sell and convey the land or mortgage the same, as she saw fit. Nancy Meyers died intestate in 1898, leaving her two daughters, appellee and Eliza, as her only heirs-at-law.

Appellant contends that by these deeds the remainders, after the life estates conveyed, were contingent at the time the conveyances were made, as at that time the grantees were single women and had no children. Before January 17, 1900, both were married and had children living at that time, and appellant insists the remainders vested when the first child was born, subject to be opened up upon the birth of other children, and that appellee therefore owns no estate in fee in any part of the lands. We think it absolutely clear that under the language of the deeds above set out in substance, the remainders to the children or grandchildren of the grantees were contingent until the termination of the life estates. The deeds in express language state that at the

270 — 8

death of the life tenant the land shall go to and vest in the child or children or descendants of children, if any, who survive the life tenant. That the remainders were contingent and no title vested in the children of the grantees until the termination of the life estate is settled by repeated decisions. (*Belding* v. *Parsons,* 258 Ill. 422; *Barr* v. *Gardner,* 259 id. 256; *Hill* v. *Hill,* 264 id. 219.) The fee therefore remained in the grantor, subject to be divested by the happening of the contingency upon which the title would vest in the remainder-men, and descended to the heirs of the grantor at her death. (*Pinkney* v. *Weaver,* 216 Ill. 185; *Messer* v. *Baldwin,* 262 id. 48; *Bond* v. *Moore,* 236 id. 576.) The court correctly held, therefore, that appellee inherited from her mother the reversion in fee to the undivided one-half in the lands, and that she had a life estate in the undivided one-half interest in the 400 acres of pasture land and an estate for the life of her sister in the undivided one-half interest in the Babb land, in sections 14 and 23. Such title was sufficient to authorize a recovery by appellee of damages wrongfully caused to her land. *Fifer* v. *Allen,* 228 Ill. 507.

We are of opinion that neither by the instructions as to the title of appellee, nor as to the measure of damages and the method of computing the same, was there any error in the instructions of the court, nor in any other respect complained of by appellant.

What we have here said renders unnecessary a discussion of appellant's claim that there was a variance between the allegations of the declaration of plaintiff's title and the proof offered on the trial.

Complaint is made of the ruling of the court in refusing to permit four witnesses to testify for appellant who were offered on the question of the value of the land. Their testimony showed their knowledge of and acquaintance with the land were so slight that the court committed no reversible error in sustaining objections to their expressing their opinion as to its value.

Jacob Jones and Charles Rickey testified as witnesses on behalf of appellee as to the condition and value of the land in 1900. Appellant offered in evidence on the trial a claim filed with the commission of claims of the State of Illinois by Nancy Meyers while she owned the land, for damages because of the construction of the Copperas Creek dam, together with her deposition in support of the claim; also the depositions of Jacob Jones and Charles Rickey, taken in 1880, in support of the claim in behalf of Nancy Meyers. Objections by appellee were sustained to the introduction of this testimony. Appellant insists that at least the depositions of Jones and Rickey as to the condition and value of the land testified to in their depositions were competent to impeach or contradict their testimony given on the trial. The depositions were too remote to be admissible. *Smith* v. *Sanitary District,* 260 Ill. 453.

As part of the proof of the corn raised on the land, appellant offered in evidence the books kept by an elevator firm in Lacon to which appellee's corn was delivered by her tenants from 1900 to the year of the trial. The court sustained an objection to the introduction of this proof, and this ruling is assigned for error. Appellee owned over 1000 acres of land, and the corn delivered to the elevator by her tenants was not all raised on the 577 acres in controversy. As we understand the evidence, there was no way of determining what part of the corn delivered to the elevator, as shown by its books, was raised on the land in controversy, and we think there was no error in the ruling of the court.

It is argued with much earnestness by appellant that the verdict is contrary to the weight of the evidence and is excessive, and this question is elaborately argued in the briefs on both sides. The trial lasted several days and a large number of witnesses testified on behalf of each party; also a great number of maps and plats were introduced in evidence by each of the parties, and photographs and other exhibits. The testimony covers more than 400 pages of the abstract

and it is impracticable to analyze or discuss it. Appellant's witnesses testified to lower values and smaller damages than appellee's witnesses, but the verdict and judgment are well within the testimony of appellee's witnesses. The weight of the testimony, we think, clearly shows the 400 acres of pasture land are practically valueless and also considerable portions of the other land. The testimony of many of appellee's witnesses would have warranted a substantially larger verdict. In such cases as this the damages are not susceptible of exact computation but must be determined from the testimony of the witnesses and the opinions expressed by them. A judgment in such cases will not be reversed on the ground that the damages are excessive unless clearly the result of passion or prejudice or manifestly contrary to the preponderance of the evidence. (*Harney* v. *Sanitary District,* 260 Ill. 54; *Jones* v. *Sanitary District,* 265 id. 98.) In view of the testimony it cannot be said that the judgment is clearly contrary to the evidence or that it indicates passion or prejudice.

We have considered the complaint of appellant that the remarks of counsel for the appellee in his closing argument were intended to, and did, arouse the passion and prejudice of the jury against it. Some of the language complained of is the subject of just criticism, but it was not of so serious a character as to justify the reversal of the judgment, which does not appear from the testimony to be extravagant or excessive. We have held that in such cases improper remarks of counsel will not require a reversal; (*Deel* v. *Heiligenstein,* 244 Ill. 239;) that the matter is one which should be left largely to the sound discretion of the trial judge; (*Chicago City Railway Co.* v. *Creech,* 207 Ill. 400;) and that every reasonable presumption will be indulged, from the sanction of the trial judge, that no misconduct of counsel materially prejudiced the opposite party, unless such misconduct and its prejudicial nature are clearly

shown by the record. *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486.

Being of opinion there is no reversible error in this record the judgment is affirmed.

*Judgment affirmed.*