(No. 11244.—Judgment affirmed.)

WILLIAM R. DALY, Defendant in Error, *vs.* THE NEW
STAUNTON COAL COMPANY, Plaintiff in Error.

*Opinion filed October 23, 1917.*

1. NEGLIGENCE—*when "bottom boss" in a coal mine is a fellow-servant and not a vice-principal.* A "bottom boss" in a coal mine who is injured by the collision of a trip of empty cars with a motor while engaged in his duty of riding the empties to their proper place is a fellow-servant of the motor-driver and not a vice-principal, where he has no authority to direct the driving of the motor or the use of its headlight or as to the conduct of the driver in looking out for obstructions, and where he did not undertake to exercise any such authority.

2. SAME—*it is a question for the jury whether headlight on a mine motor complies with the Mining act.* In an action for negligence it is a question for the jury whether a small electric light on the front end of a motor in a coal mine is a "conspicuous white light" within the meaning of the Mining act.

3. SAME—*evidence of contributory negligence immaterial where employer has elected not to be governed by Workmen's Compensation act.* In an action for negligence where the employer, who is engaged in a hazardous occupation, has elected not to be governed by the Workmen's Compensation act, evidence or want of evidence of contributory negligence is immaterial, as in such case the employer is prevented by the statute from making the defenses of assumed risk, contributory negligence or that the injury was caused by the negligence of a fellow-servant.

4. SAME—*what is not a proper statement in argument.* Counsel for the plaintiff in an action for negligence may in his argument state the fact that the defendant has elected not to be bound by the Workmen's Compensation act and is therefore barred from making the defenses of assumed risk and contributory negligence, but it is improper for him to state that if defendant had elected to be bound by the act plaintiff would not have had to hire lawyers and the case would have been tried in a different way and not in court.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

WILLIAM E. WHEELER, for plaintiff in error.

BURTON & BURTON, and CLARK & HUTTON, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The circuit court of Madison county rendered a judgment for $9500 in favor of William R. Daly, defendant in error, and against plaintiff in error, for personal injuries received by him while employed in plaintiff in error's coal mine at Livingston, in said county, after requiring a *remittitur* of $5500. The judgment was affirmed by the Appellate Court for the Fourth District on appeal to that court. A petition for *certiorari* was allowed by this court.

The record discloses that coal was hoisted from plaintiff in error's mine by means of a perpendicular shaft. The main entry of the mine extended north and south and the loaded cars were brought to the main entry at a point north of the shaft, and after they were hoisted and dumped were returned to the bottom and sent off to the south of the shaft and there stored and later were taken into the workings of the mine to be re-filled. The main entry contained a double track, which is crossed by an east and west entry about three hundred feet north of the cages, the portion of the latter entry east of the main entry being known as the east main entry and the part of it west of the main entry as the west main entry. At said crossing the machine shop of plaintiff in error was located. West of the cages was a narrow entry known as the west run-around, which started at a point on the main entry about one hundred feet south of the cages and ran northwesterly to the west main entry at a point about two hundred feet west of the main entry. There was also another entry known as the west cross-over, starting at a point on the main entry about seventy feet north of the cages and running southwesterly in a curve a distance of one hundred and forty-five feet to the west run-

around. There were similar and corresponding entries east of the cages, known as the east run-around and the east cross-over. The cross-overs and the south part of the run-arounds enclose a .heart-shaped figure, the apex or small part of the heart being south ·of the cages and the broad part of the heart-shaped figure, which is about two hundred feet wide, being north of the cages. The loaded cars and the empty cars for re-distribution were hauled by electric motors to the bottom on the main entry and were first deposited just north of the north end of the run-arounds. The motors would then proceed through one of the cross-overs and run-arounds to the main entry south of the cages, where they would couple onto a trip of empties and return to the workings of the mine by way of the run-arounds and the east and west main entries. Empties improperly distributed were usually left on the rear of the trip of loaded cars at the bottom while the motor was making a running switch through the cross-overs.

On October 23, 1913, defendant in error was at work in the plaintiff in error's mine as bottom boss. About two o'clock in the afternoon Emil Windisch, a motor driver of plaintiff in error, brought a trip of cars from the west main entry onto the main entry and deposited them just north of the cross-overs and then proceeded southwesterly through the west cross-over and run-around to the main entry south of the cages for his trip of empties. Defendant in error was near the north end of the cross-overs at the time Windisch brought in that trip of loaded cars and about that time went north on the main entry to the machine shop to see the mine manager. On his return to the cross-overs he inquired of some of the bottom-men near the cage if Windisch had gone out into the mine with his trip of empties and was informed that he had. Defendant in error found four empty cars that Windisch had brought with his trip of loaded cars, and in the performance of his duties proceeded to run those empty cars by way of the west cross-

over through the west run-around to the south main entry.
The cross-overs and run-arounds are so constructed that
the cars move on them from the north main entry to the
south main entry by force of their own gravity, except,
perhaps, at their junctions over the switches there.  De-
fendant in error rode on the rear end of the rear of the
four cars, and as they were nearing the junction or switch
of the west cross-over and run-around he suddenly discov-
ered the light on the motor driven by Windisch, or the re-
flection of it on the west wall of the run-around opposite
the junction, and instantly realizing that a collision between
his four cars and the motor was inevitable, he jumped from
the cars to save himself.  The motor driven by Windisch
collided with the front car of the four cars about ten or
twenty feet south of the junction, and as a result of said
collision defendant in error was thrown to the ground and
one or two of his four cars were driven back over him,
crushing his right leg and otherwise severely injuring him
and necessitating the amputation of his leg.

The motor operated by Windisch had two lights, one
of which was a sixteen-candle incandescent electric light lo-
cated upon the motor about two feet above the rail, which,
as shown by the testimony of both parties, did not give
very much light in front of the motor.  The other was an
arc light located on top of the motor, which had a reflector
and gave a large and brilliant light,—as some of the wit-
nesses described it, similar to an automobile light.  This
light was the one upon which the motor driver depended
for lighting up the entry in front of him, and could be
turned like a spot-light on an automobile so as to give light
in any direction desired,—to the front, to the rear or on
the sides of the entry.  It only gave light, however, in the
direction in which the lens was turned and would light up
the entry of a run-around for about a hundred feet, so that
the motor driver could see objects distinctly that distance
in the direction in which the light was turned.

· The declaration upon which the case was tried consisted of three counts, the third count of which charged that the plaintiff in error, by its said motor driver, carelessly and negligently drove and propelled said motor northward on said run-around toward said junction without the headlight of the same burning or shining, and in consequence thereof defendant in error was not warned of his danger and was thereby injured. The fourth count charged the same negligence, and further charged that the motor driver negligently failed to keep a proper look-out ahead of him so that he might discover any danger of such collision, etc. The sixth count charged a willful failure upon the part of the plaintiff in error to carry a conspicuous white light on the front end of said motor train and trip of cars, as required by the statute on mines and miners, and by reason thereof defendant in error was injured. `All the counts further charged that plaintiff in error had elected and had given the statutory notice that it would not be governed by the Workmen's Compensation act. Plaintiff in error filed a plea of not guilty to the whole of the declaration.

Plaintiff in error relies mainly for a reversal of the judgment upon its contention that the circuit court should have excluded the defendant in error's evidence and should have directed a verdict of not guilty, in accordance with its motion at the close of the evidence for defendant in error and at the close of all the evidence in the case. It is urged in support of that contention that defendant in error was a vice-principal, and that if there was any negligence on the part of the motorman in the operation of his motor that occasioned the injuries such negligence was also the negligence of defendant in error as a vice-principal and as a result of the motorman following the instructions given him by defendant in error. A careful analysis of the evidence in the case shows clearly that the position of plaintiff in error is not tenable. At the time of the injury to defendant in error he had no control whatever over Windisch as

a vice-principal. This is shown clearly by the evidence of defendant in error and is not contradicted by the evidence of plaintiff in error, except by the declarations of the mine manager in his testimony that defendant in error had control of Windisch and the men in the bottom and on the cross-overs and run-arounds. This was a mere conclusion of the witness and was not borne out by any facts stated by him. As shown by the evidence of both parties, defendant in error was what was known at that mine as the bottom boss,—*i. e.*, that the ten or twelve men who worked on the bottom were under his direction, in the absence of the mine manager, as to the movement of the cars on the bottom for the purposes of hoisting the coal and of distributing the empty cars. So far as the motor drivers were concerned, the only showing in the record of his control of them is, that when they came to the bottom with a trip of cars they were to stop or place the cars where he directed them. He also gave them directions for the distribution of the empties,—that is to say, as to the number they should take out into the working and perhaps as to the points to which they were to be delivered. He was not authorized to give the motor drivers any orders or instructions whatever as to what they should do or as to how they should run their motors after they left the bottom or the main entry to distribute cars or as to how they should drive through the cross-overs or run-arounds in going after the empties. Defendant in error's testimony as to his authority was, in substance, that he got his orders from the mine manager, and that his orders related to the men around the bottom and to men at no other points unless he received special orders to that effect; that the mine manager gave his specific orders each morning and noon as to what defendant in error should direct or tell the men to do and that he tried to carry out those orders exactly as given; that when the motormen would be at the bottom they would be subject to his orders when he got orders to that effect, and

that he did not have charge of the run-arounds and did not direct the men in the run-arounds or cross-overs; that he only controlled the movements of the loaded and empty cars when they came to the bottom to be hoisted. The testimony of Moss, the mine manager, is, in substance, the same as that of defendant in error,—that it was his duty to carry out the orders of the mine manager, and if the mine manager directed him to tell the men to do a certain thing it was his duty to go to them and direct them to do it; that it was defendant in error's duty to do anything witness told him to do, and that his territory as bottom boss was on the bottom, unless otherwise specified in some particular order. The difference in their testimony is principally in the fact that the mine manager stated in general language that the cross-overs and run-arounds were a part of the bottom, while defendant in error's claim was that the bottom only included the territory on the main entry from the machine shop to a point about three hundred feet south of the cages. The mine manager at no time stated that defendant in error had any right to direct the motor drivers or to tell them how they should handle or run their motors. It also clearly appears that defendant in error assisted in doing the bottom work himself, and that it was a part of his duty to move empty cars that were brought in with loaded trips and to carry them from the north side of the cages to the south side for re-distribution. These cars were thus moved so as not to interfere with the work of hoisting on the cages by moving them across the cages, and it was not the practice to carry them through the cross-overs and run-arounds by the motor. Under the evidence defendant in error was clearly not a vice-principal at the time he was injured but was a fellow-servant of Windisch. He was entrusted with no attribute or personal duty of the plaintiff in error cast upon him as a matter of law or retained by him as master over such servant. His very act or omission at the time he was injured was an act or omis-

sion likely to be performed or omitted by any other of the servants working on the bottom. He was simply moving empty cars from one side of the cages to the other through the said entries, and according to his claim he was injured by the failure of the motorman to keep a proper look-out for him and the cars he was riding, and by his failure to display his headlight so that defendant in error could avoid the danger of collision by leaving the cars before they collided with the motor. According to the case made for the defendant in error he was not a vice-principal within the meaning of that term, as he had no authority to direct or control Windisch as to how he should drive or manage his motor or as to how he should use the big headlight on the motor or as to his conduct in looking out for and discovering obstructions or persons in front of him, and did not undertake to exercise such authority by any order or direction on his part. *Chenoweth* v. *Burr*, 242 Ill. 312.

The evidence further discloses, as already stated, that if Windisch had had his big headlight turned on and casting its light in front of him and up the west run-around as he started northward in that entry with the trip of empties it would have cast a light on the west wall of that entry opposite the mouth of the cross-over at the junction for a distance of one hundred feet south of the junction, and the reflection on that wall at that point could and would have been seen by defendant in error for a distance of seventy feet or more north of the junction as he was going through the cross-over with the four empty cars. He would thus have had ample opportunity to have saved himself from injury by the collision if the headlight had been shining northward up the run-around. Windisch admits in his testimony that the big headlight was turned to the southward and that he was standing up looking backward over his trip of empties to see if he had lost any of them, and that he rode in this manner up that entry until he was within ten feet of the junction with the cross-over. The verdict of

the jury is therefore clearly sustained under the sixth count of the declaration, if not also under the third and fourth counts. He was not in the exercise of due care in looking out for obstructions ahead and was not giving defendant in error the benefit of the light of the big headlight, as the statute requires. There can be no question that it was a question for the jury as to whether or not the small electric light was a "conspicuous white light" within the meaning of the Mining statute. (*Eldorado Coal Co.* v. *Swan,* 227 Ill. 586.) The testimony of Windisch, a witness for plaintiff in error, shows that it was not such a light, and the practice of plaintiff in error in the use of the big headlight tends to show that the small light was not depended on as being such a light. The excuse or explanation of his failure to have the big headlight reflecting northward in front of him is that defendant in error had reminded him at noon on· that day that he had lost some of his empty cars on a former trip and had directed him to keep a look-out backward over his trip of empties to see that all of them were following him and coupled in the trip. This is denied by defendant in error, and even if it were not so denied there is no claim or pretense that defendant in error had directed Windisch to continue the running of his motor with the headlight turned rearward while he was making such observation. Besides, the plaintiff in error received all advantage of such a defense to which it is entitled by an instruction of the court which directed the jury, in substance, that if they believed, from the evidence, that Daly was bottom boss in charge of the motormen at the bottom and that his injury resulted from his giving Windisch an order to look back over his trip to ascertain if any cars in his trip were lost, and that the giving of such order was the proximate cause of his injury, their verdict should be for plaintiff in error.

Plaintiff in error's objection that the trial court erred in admitting the testimony of the bottom-men and of de-

fendant in error to prove that he received information before he started with the four cars through the cross-over that Windisch had already gone northward with his trip of empties is well grounded. This is so simply because plaintiff in error, having elected not to be bound by the Workmen's Compensation act, is prevented by the statute from making any one of the defenses of assumed risk, contributory negligence or that the injury was caused by the negligence of a fellow-servant. Contributory negligence not being a defense, the evidence or want of evidence of contributory negligence was immaterial to any issue in the case. It was, therefore, technically speaking, erroneous to admit such evidence. The error, however, was not prejudicial, so far as we are able to perceive. The evidence in that regard was only introduced for the purpose of showing that Daly was not, in fact, chargeable with negligence in entering the run-around with his four cars at that time. No intimation at any time was made to the jury that plaintiff in error was made liable by the erroneous information given to Daly by the bottom-men.

We have examined the instructions given to the jury carefully. The instructions asked by defendant in error and as given by the court correctly state the law of the case. His third instruction simply advised the jury that the Mining law provided that "a conspicuous white light must be carried on the front and a conspicuous red light or white signal-board on the rear of every trip or train of pit cars run by machinery." The reference to the conspicuous red light might properly have been omitted from the instruction, but the instruction stated the law correctly and the jury were not misled by the reference to the red light. There was no evidence concerning the red light in the case, but the instructions of the court made it clear to the jury that the only question before the jury was whether or not plaintiff in error violated the statute with reference to the carrying of a conspicuous white light on the front of the

motor and thereby caused defendant in error's injury, so far as the statutory right of recovery was concerned. The other instructions of defendant in error are clearly right and proper and are not subject to any of the objections raised to them.

Plaintiff in error's refused instructions were all erroneous with the possible exception of the first. No. 2 thereof in substance would have informed the jury that Daly was bound by the action of Evans, a bottom employee, in misinforming him as to whether or not Windisch had gone out with his load of empties and that he could not recover if such misinformation was the proximate cause of his injury. That instruction amounted to a direction to the jury that contributory negligence on the part of defendant in error would bar a recovery, or that the negligence of a fellow-servant (Evans) would bar his right of recovery if a proximate cause of the injury, although the willful failure of plaintiff in error to comply with said Mining law with reference to the carrying of lights was also a proximate cause of the injury. Such is not the law. Refused instruction No. 3 in substance stated that while contributory negligence is no defense in this case, still it is a defense if Daly's contributory negligence was the proximate cause of his injury. Negligence on the part of Daly could not be said to be contributory negligence if it was not a proximate cause of his injury. The instruction was erroneous and the giving of it would have constituted error. Refused instruction No. 1 merely stated that plaintiff in error was not bound by Evans' statement that Windisch had left the bottom with his trip of empties and that the jury could not find against plaintiff in error solely upon the mis-statement of Evans. There was no claim upon the part of defendant in error that plaintiff in error was bound by Evans' statement or that he was relying upon it as an act of plaintiff in error for a cause of recovery. It was merely introduced for the purpose of proving or tending to prove that de-

fendant in error was not guilty of negligence, and the jury, under the instructions given by the court, could not reasonably have understood it otherwise. Besides, it was somewhat objectionable because as worded the jury were liable to take it that the defendant in error was relying upon that statement as a cause of recovery.

In his opening argument to the jury one of the counsel for defendant in error stated to the jury that if plaintiff in error had accepted the provisions of the Workmen's Compensation act it would have had to pay all of its employees who were injured certain specified sums for injuries, and that this suit would not have been necessary and defendant in error would not have had to hire lawyers, as the case would have been tried in a different way and not in court. Counsel had no right to make such a statement to the jury, and had this case not been so clearly made out to the jury we would be disposed to consider it reversible error. It was proper to tell the jury that plaintiff in error had not accepted the Workmen's Compensation act and that it was barred of the three defenses heretofore mentioned, but the remainder of the statement would have been very prejudicial in a close case. The court, however, very promptly sustained an objection to the remarks of counsel, and the jury were given to understand that they were improper and not to be considered. The ultimate facts as found in both the trial and the Appellate Courts are binding on this court, and the evidence can only be reviewed for the purpose of determining, as a matter of law, whether a case was made out to the jury and whether or not the record contains reversible error.

A careful review of the evidence has convinced us that plaintiff in error could not reasonably expect a verdict of not guilty by another jury. We therefore hold that under the showing in this record the circuit court committed no reversible error, and the judgment of the Appellate Court is therefore affirmed.          *Judgment affirmed.*