# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

CHICAGO, WILMINGTON AND VERMILION COAL COMPANY

*v.*

THOMAS MORAN.

*Opinion filed April 20, 1904—Rehearing denied June 9, 1904.*

1. EVIDENCE—*section 18 of Evidence act does not apply to private contract.* Section 18 of the Evidence act, relating to the introduction of copies in evidence, relates only to papers, entries and records mentioned in the previous sections, and does not authorize the introduction of copies of contracts between parties.

2. SAME—*when refusal to permit witness to answer proper question is harmless.* Refusal to permit an experienced witness to state whether there was any duty of a coal miner to be performed in the entry-way to a room in a mine is not harmful, where the witness is allowed to state the general purpose and use of such entry-ways.

3. INSTRUCTIONS—*when giving of an objectionable instruction will not reverse.* Giving an instruction which is objectionable for repetition of the various elements which might enter into the damages is not reversible error, where the instruction contains no improper elements and the damages awarded are not excessive.

4. SAME—*instruction should not state that particular act is negligence.* Instructions which are designed to inform the jury that plaintiff was guilty of negligence in preparing props and caps in the entry-way in a mine are properly refused, as invading province of jury.

5. SAME—*when instruction referring to relation of fellow-servants is properly refused.* An instruction relieving the defendant from lia-

bility if the jury found plaintiff was injured by the negligence of a fellow-servant is properly refused, where the defendant's negligence is proved beyond all doubt or dispute.

6. SAME—*when refusal of instructions precluding recovery on each count will not reverse.* Refusal of instructions severally applicable to each count and stating that plaintiff could not recover under such count is not reversible error, even though there is no evidence sustaining two of the counts, where the other counts each state a cause of action which the evidence tends to sustain.

7. PARENT AND CHILD—*when minor working with parent is not mere licensee.* A minor child working jointly with his father in a mine is not a mere licensee, notwithstanding the father collects his pay.

8. NEGLIGENCE—*contributory negligence is not excused by gross negligence of defendant.* Contributory negligence by the plaintiff is not excused by gross negligence of the defendant short of a willful act or willful or intentional neglect of duty.

9. APPEALS AND ERRORS—*when erroneous modification of an instruction will not reverse.* Erroneous modification of an instruction so as to·permit a recovery by the plaintiff although guilty of contributory negligence if the defendant was guilty of gross negligence will not reverse, where there is nothing in the evidence fairly tending to prove such contributory negligence.

10. ARREST OF JUDGMENT—*when motion in arrest is properly denied.* A motion in arrest of judgment is properly denied where there is one good count in the declaration sufficient to sustain the judgment.

*Chicago, Wil. and Ver. Coal Co.* v. *Moran,* 110 Ill. App. 664, affirmed.


APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. H. M. TRIMBLE, Judge, presiding.

FRED T. BEERS, (MASTIN & MOSS, of counsel,) for appellant.

DUNCAN, DOYLE & O'CONOR, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On January 26, 1901, the appellee, Thomas Moran, a boy sixteen years of age, was working with his father, Patrick Moran, in a coal mine of the appellant, the Chi-

cago, Wilmington and Vermilion Coal Company, at Sea-
tonville, Illinois. Appellant paid Patrick Moran by the
ton for the coal mined by himself and his minor son, the
appellee. They worked in room 77, and their method
was to undercut or take out six inches of clay under the
vein of coal, which was about three feet and six inches
thick. The full width of the room was forty-two feet,
and after removal of the coal it was about four feet high.
They also took down the ledge of rock, two feet thick
and nine feet wide, above the coal, which was the width
of the entry behind the room, and they used the rock to
build the walls on either side of the entry-way, so that
the entry was six feet high. In this way the room ad-
vanced in distance from the shaft about three feet each
day and the entry-way was correspondingly lengthened.
The entry-way was in the center of the forty-two foot
room. Tracks were laid in the entry, and when a car was
filled the driver would take it out and put in an empty
car. Some time previously props had been furnished
the appellee and his father to hold up the roof over the
room and were placed in the entry near the coal, but the
company men who attended to the passageway at night,
repaired tracks and did other work for the company,
found them in the way and carried them back into the
entry and laid them along the track. Appellee and his
father needing props to support the roof, appellee went
along the entry to the place where props furnished them
had been put, and sawed a prop and then began sawing
a cap. He had laid the cap across the track and was
on his knees sawing it, when a rock fell from the roof
upon him, seriously and permanently injuring him. He
brought this suit by his father, as next friend, to recover
damages for his injury.

There were five counts in the declaration, the first
three of which charged the defendant with negligently
allowing the roof of the entry-way to be and remain in
a dangerous and unsafe condition. The fourth charged

that defendant knowingly and willfully furnished props, caps and timbers to be used by plaintiff, in an unsafe and dangerous place. The fifth charged defendant with willfully and negligently omitting the duties of inspection by a mine examiner, provided by statute. There was a plea of the general issue, and a plea that plaintiff was not in the employ of the defendant when injured. Upon a trial the defendant was found guilty and the plaintiff's damages were assessed at $5000. Judgment was entered on the verdict and was affirmed by the Appellate Court for the Second District.

The assignment of errors covers the refusal of the court to admit evidence offered by the defendant, the giving of instructions on the part of the plaintiff, and the modification of some instructions and the refusal of others submitted by the defendant, and the overruling of defendant's motion in arrest of judgment.

On the trial defendant examined James Cherry as a witness, and he testified that he was the person whose name appeared as one of the signers of an agreement of which the pamphlet was a copy, and that he signed such agreement. The defendant then offered in evidence certain articles of the pamphlet, which purported to be a copy of an agreement signed by various persons on behalf of the coal mine operators and other persons on behalf of the United Mine Workers. The material article offered related to the duty of a miner to notify that suitable props and caps were needed, and not to continue work until they were furnished. The evidence tended to prove that the plaintiff and his father were working in accordance with an agreement between the Operators' Association and the United Mine Workers. They were members of the United Mine Workers of Illinois, and plaintiff belonged to the local organization at Seatonville, where the mine was. The evidence was objected to because not the best. No foundation was laid for the introduction of the alleged copy and the absence

of the original was not accounted for. Section 18 of the act in regard to evidence and depositions, which counsel insist authorizes the introduction of a copy, relates only to papers, entries and records mentioned in the previous sections, and does not authorize the introduction of copies of contracts between parties. The ruling was right, and the evidence would have availed nothing to the defendant if it had been admitted. Props and caps had been furnished for the use of the plaintiff and his father in such place as the defendant saw fit to deposit them for that use, and the same witness Cherry, who was superintendent of the mine, testified that if props were furnished as these were, the plaintiff would have a right, as a matter of course, to go and get them. In fact, that was never controverted at the trial. The only dispute was whether plaintiff had a right to stop in the entry to saw them.

The same witness was asked if there was any service or duty of a coal miner to be performed in the roadway or entry-way, and an objection was sustained. The witness had been in the business of coal mining for fifty years and the question called for an answer as to a matter of fact which would have been proper for the jury to know. The witness, however, testified that the entries and roadways were for the miners to travel to and from their work and for transportation of coal and empty cars, and there was no evidence or claim that they were intended primarily for work. We therefore think that the ruling did no harm. The reason offered by plaintiff for sawing the prop and cap in the entry-way was that there was plenty of height and space there, while in the room at the face of the coal there was not sufficient height.

There was also evidence that the pit-boss assured the plaintiff the roof was safe, and evidence that the entry-way was the only suitable place for preparing the props and caps. The evidence for plaintiff was that his father called the attention of the pit-boss to the roof

about ten days before the accident, and the pit-boss said he would send men to fix it, and told him to go ahead and work,—that he thought it was safe enough; also, that two days before the accident the father met the pit-boss again and told him he had better go in and fix the roof,—that it was getting worse; and the pit-boss said he would fix it as soon as he could get around to it—that they should keep at work and nothing would happen. The father testified that on the occasion two days before the accident the pit-boss told him he would fix it sometime; that it was all right, and that he would have to let the roof settle before fixing it. The pit-boss testified that two or three days before the accident he looked over the place and found it bad, and notified the father that he would have it attended to. There can be no reasonable doubt that the rock which fell had been loose and the top of the entry-way cracked; that the defendant had notice of it at least two days before the accident, and was guilty of negligence in not using reasonable diligence to make it reasonably safe. It was in consequence of such negligence, about which there was no controversy or dispute, that the accident happened. There was no evidence tending to prove a defense, unless the plaintiff was guilty of contributory negligence in sawing the prop and cap in the entry-way instead of carrying them to the face of the coal for that purpose.

The court gave three instructions at the instance of the plaintiff relating to the question of damages, and purporting to state the various things which the jury might consider. The instructions are lengthy, and repeat the various elements which enter into the damages in such cases and the things which were to be considered by the jury, and are objectionable on account of such repetition. It is not a proper practice to give instructions creating the impression that particular evidence or a particular fact is of prime importance in the view of the court, and laying special stress upon it. These in-

structions, however, contain no improper elements, and it is conceded that the damages awarded are only fairly compensatory, so that they had, in this case, no improper or injurious effect.

Defendant asked the court to give to the jury twenty-nine instructions, of which sixteen were refused, eight were modified and given as modified, and the remainder were given as asked. The instructions are very lengthy, and their number and length preclude a review of them severally.

The eighteenth, nineteenth and twentieth, which were refused, were designed to inform the jury that plaintiff was guilty of negligence in preparing the prop and cap in the entry-way, and would have taken from the jury the question whether, under the circumstances, he was in the exercise of ordinary care in sawing them where they had been deposited by the defendant for his use. They were properly refused for that reason.

The twenty-fourth, which was refused, stated what would constitute the plaintiff and his father fellow-servants in law, and that if the plaintiff was injured by the negligence of his father in placing him in a position of increased danger, they must find the defendant not guilty. The court was right in refusing that instruction, for the reason that the defendant had been proved guilty of negligence beyond all doubt or dispute, and, being responsible for the consequence of its own negligence, it would be liable no matter how negligent a fellow-servant might have been.

Instructions Nos. 25 and 26 relate to the assumption of risk by the plaintiff, and were refused. It is urged that the plaintiff disregarded his duty in leaving his room to work in the entry-way with knowledge of the danger, and therefore assumed the risk, and that the father was chargeable with the care of his son, the plaintiff, and if the father knew the roof in the entry was bad and did not call for props and caps to be delivered at the room,

the son assumed the risk. The instructions ignored the evidence that plaintiff and his father were assured by the pit-boss that the roof was safe and to go on with the work, as well as all the other circumstances tending to show that the plaintiff did not assume the risk, and 'they were properly refused.

The principle stated in the twenty-first instruction, which was refused, to the effect that if the plaintiff was injured while doing something outside of the place of his employment in an improper place, voluntarily or by the direction of his father, and without the knowledge or direction of the defendant, he could not recover, was fully covered by other instructions that were given.

There were instructions offered by the defendant and refused, severally applicable to each count, and stating that the plaintiff could not recover under such count, and they were all refused. There was no evidence tending to sustain the fourth and fifth counts, but the first three counts each stated a good cause of action, and there was evidence tending to sustain them. The court might properly have given the instructions relating to the fourth and fifth counts, but inasmuch as the first three counts each stated a cause of action and the evidence was applicable to them, the refusal of the instructions as to the fourth and fifth is not ground for reversal.

Instruction No. 28, which was refused, stated that if plaintiff's father used his minor son as an assistant and received the earnings from their joint work, the son was a mere licensee. The evidence was, that the ticket put on their car was Moran & Son; that they worked jointly for the defendant, and that the father collected the pay, to which he was entitled on account of the minority of the son. The instruction was not the law, and was properly refused.

Some instructions were purely abstract, and it was not error to refuse them. Instruction No. 25 was of that character.

There was no error in any modification made by the court except in instruction 12. The instruction as asked defined the words "contributory negligence," and stated that if the plaintiff was guilty of such negligence the jury must find the defendant not guilty, even though they might believe the defendant was chargeable with negligence in the matters complained of in the declaration. The court modified it so as to permit a recovery if the plaintiff by his own negligence contributed to the injury complained of, if the jury also believed, from the evidence, that the defendant was chargeable with gross negligence. As modified it was incorrect, since the law does not permit a recovery by a plaintiff guilty of contributory negligence, on the ground that the negligence of the defendant was gross. Nothing short of a willful act or willful or intentional neglect of duty will authorize a recovery by a plaintiff guilty of negligence contributing to the injury complained of. As the modification was clearly wrong, the only question is whether it ought to work a reversal of the judgment. The plaintiff was a minor, sixteen years of age, and there was evidence that he had been assured by the pit-boss that the place was safe and had been directed to go on with his work. It is also beyond question that the only place fit for sawing props or caps was in the entry-way. The props, which had been placed in such entry-way near the face of the coal, had been moved back by the defendant to the place where plaintiff attempted to saw them. We do not think, when the whole evidence is considered, that there was anything fairly tending to prove that plaintiff was guilty of contributory negligence, or that the jury could have so found if the instruction had been given as asked, and therefore we do not regard the modification as error for which the judgment should be reversed.

There was a motion in arrest of judgment, which, it is said, ought to have been sustained because the first count is not sufficient to sustain the judgment. We are

210—2

of the opinion that the first count is good, and if it were not, the second and third are, and where there is one good count a motion in arrest of judgment must be denied.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*