THE ELDORADO COAL AND COKE COMPANY

*v.*

GEORGE SWAN.

*Opinion filed June 19, 1907.*

1. MINES—*whether the torch at bottom of shaft gave sufficient light is a question of fact.* Whether the torch maintained at the bottom of the shaft in a mine gave sufficient light to enable the miners to plainly discern the cage and objects in the vicinity is a question of fact for the jury, where the evidence upon such question is conflicting.

2. SAME—*honest attempt to comply with statute does not prevent failure from being willful.* Willful violation of the Mines act means conscious violation, and the mere fact that a mine owner or operator has attempted in good faith to comply with the statute by keeping some kind of a light at the bottom of the shaft does not prevent his conduct from being a willful violation of the statute if the light is, in fact, inadequate for purposes specified by the statute.

3. PLEADING—*effect where jury makes separate finding of guilty on each count.* A separate finding of guilty on each count of the declaration in a personal injury case has no other effect than a general verdict finding the defendant guilty as charged in the declaration, and it is not necessary, in order to sustain the judgment, that all the counts be sustained, and one good count sustained by the evidence is sufficient.

4. TRIAL—*when improper conduct of counsel will not require reversal.* In an action for damages for alleged willful violation of the Mines act, improper conduct upon the part of counsel for plaintiff in persisting, after adverse rulings of the court, in asking questions implying that defendant was insured in a casualty company, will not require reversal, where the case is reasonably clear on the facts and the verdict is small, in view of the injury sustained.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Saline county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

This is an action on the case brought by appellee, against appellant, in the circuit court of Saline county, to recover damages said to have been sustained by appellee through

the alleged willful failure of appellant to comply with section 28 of the Mines and Miners act. (Hurd's Stat. 1905, p. 1392.)

The section of the act alleged to have been willfully violated by appellant is as follows:

"Sec. 28. (*a*)—At every shaft operated by steam power, the operator must station at the top and at the bottom of such shaft a competent man charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages. Said top man and bottom man shall be at their respective posts of duty at least a half hour before the hoisting of coal begins in the morning, and remain for half an hour after hoisting ceases for the day.

"(*b*)—Whenever the hoisting or lowering of men occurs before daylight or after dark, or when the landing at which men take or leave the cage is at all obscured by steam or otherwise, there must always be maintained at such landing a light sufficient to show the landing and surrounding objects distinctly. Likewise, as long as there are men underground in any mine the operator shall maintain a good and sufficient light at the bottom of the shaft thereof so that persons coming to the bottom may clearly discern the cage and objects in the vicinity."

Section 33 of the same act contains the following provision: "For any injury to person or property, occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby."

The declaration consists of two counts, the first of which alleges that appellant willfully failed and neglected to maintain a good and sufficient light at the bottom of the shaft, so that persons coming to the bottom might clearly discern the cage and objects in the vicinity thereof, by reason whereof the plaintiff then and there fell into the excavation at

the bottom of the shaft and was then and there injured. The second count avers that appellant willfully neglected to have stationed at the bottom of said shaft a competent man charged with the duty of attending signals, preserving order and enforcing the rules governing the carriage of men on cages, by reason whereof the appellee was then and there struck by said cage and injured. The jury returned a verdict finding appellant guilty upon the first and second counts of the declaration and assessed appellee's damages at $1000. Appellee entered a *remittitur* of one dollar, and after motions for a new trial and in arrest were overruled, judgment was entered upon the verdict in favor of the appellee and against appellant for $999. Appellant prosecuted an appeal to the Appellate Court for the Fourth District, where the judgment was affirmed, and by its further appeal upon a certificate of importance the record is brought to this court for review.

E. E. DENISON, (W. F. SCOTT, of counsel,) for appellant.

JOHN L. THOMPSON, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Error is assigned on the refusal of the court to direct a verdict at the close of all the evidence. This assignment presents the question whether there is any evidence fairly tending to establish the material averments in either count of the declaration. Aside from matters of inducement the material averments in the first count are: (1) That appellant failed to comply with the statute in regard to maintaining a light at the bottom of the shaft; (2) that its failure in this regard was willful; and (3) that appellee was injured as a direct result of this willful failure on the part of appellant.

Appellant's contention is that it complied with the statute in regard to maintaining a light at the bottom of the

shaft, or if it failed to comply with the statute the evidence shows that it made an honest attempt to conform to the requirements of the law, and that such attempt rebuts the element of willfulness and converts appellant's wrong, if any, into one of simple negligence. A brief reference to the evidence will be necessary.

The witnesses all agree that appellant maintained some sort of light at the bottom of the shaft, though they disagree as to the amount of the light. The device used is described as a torch or lamp in which oil was used. The mine was over four hundred feet below the surface, and, of course, was utterly dark except when artificially lighted. Appellee, in coming to the bottom of the shaft from his working place, fell into the sump, which is an excavation seven or eight feet deep, directly below the landing place of the cage. The sump is the place where the water is collected to be pumped out. Almost instantly after appellee fell into the sump the cage descended and caught him between the cage and the timbers of the sump, severely crushing and injuring him. Appellee's lamp was not burning, and he made his way to the bottom without the aid of the light usually carried by miners. He says that if there was any light burning at the bottom of the shaft he did not see it. A man-way was provided around the shaft to enable men to pass from one side of the shaft to the other in safety. Appellee passed by the entrance to the man-way and fell into the sump. Some of the witnesses say that the torch was burning with a flame three inches long and that it enabled one to discern the cage and objects in the vicinity, while others say that the flame was not more than one-half inch long and afforded little or no light. Whether there was a sufficient light at the bottom of this shaft so that persons coming to the bottom could clearly discern the cage and objects in its vicinity was a question of fact, which was properly submitted to the jury. We have no concern with the question of where the preponderance of the evidence is

on this or any other controverted question, but can only determine whether there is any evidence fairly tending to support the declaration.

Appellant's most serious contention is, that even if it be conceded that the light was not fully up to the legal requirements in respect to the amount of light, still when the evidence all shows that appellant had made an honest effort to comply with the statute and had partially failed, it can not be adjudged guilty of a willful violation of the law, even if its partial failure arises from negligence on its part in the selection of the means or the method of their application, with the view of complying with the statute. This argument is more ingenious than sound. The fallacy of the argument results from the assumed meaning of the word "willful," as it is used in the Miners act. If it were necessary to show an evil intent or any blamable conduct to establish the willfulness contemplated by this statute then there would be more force in this contention. But no such construction of this statute has ever been recognized by this court. On the contrary, it has often been held that an act consciously done,—that is, proceeding from the free and voluntary will,—is willful, within the statute. In *Odin Coal Co.* v. *Denman,* 185 Ill. 413, it is said (p. 418) : " 'Willful' is a word of familiar use in every branch of law, and although in some branches of law it may have a special meaning, it generally, as used in courts of law, implies nothing blamable, but merely that the person of whose action or default the expression is used is a free agent, and that what has been done arises from the spontaneous action of his will. It amounts to nothing more than this : That he knows what he is doing and intends to do what he is doing, and is a free agent." Again, in *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495, we said (p. 502) : "Where an owner, operator or manager so constructs or equips his mine that he knowingly operates it without conforming to the provisions of this act, he willfully disregards its provisions and willfully disre-

gards the safety of miners employed therein." A willful violation of the statute is a conscious violation. (*Marquette Coal Co.* v. *Dielie,* 208 Ill. 116; *Kellyville Coal Co.* v. *Strine,* 217 id. 516.) In the *Strine case* this court reviewed many of its previous decisions, and we refer to the cases there cited without again giving them in detail.

In some of these cases, as in the case at bar, a reliance on something short of a full compliance with the statute was urged as an answer to the charge of willfulness. Thus, in *Catlett* v. *Young,* 143 Ill. 74, where the charge was that the operator had willfully failed to securely fence with gates the top of the shaft, thus covering and protecting it from entrance, it was shown that a fence had been constructed around the mouth of the shaft, and that such fence and the car when not in use furnished a covering for the shaft, and we held that such partial compliance with the statute did not excuse the operator from the charge of a willful violation. In disposing of that question this court, speaking through Mr. Justice Baker, said (p. 82) : "In our opinion it was not error to refuse to instruct the jury that if they believed, from the testimony, that the defendant in good faith, for the protection of the entrance, boarded and fenced it, and arranged the car, and the operation of it, to act as a gate or covering for the shaft, and that such protection was sufficient to protect a person in the exercise of the care that a person of ordinary care should, under the circumstances, exercise, from falling into the shaft, then the act of the defendants was not willful and the verdict should be for them. That which the statute required was that the top of the shaft should be securely fenced by gates properly covering and protecting the shaft and the entrances thereto. As was said in *Bartlett Coal and Mining Co.* v. *Roach,* 68 Ill. 174, the very object to be attained by the statute was to prevent injuries to persons employed in coal mines, so that negligence on their part in the manner of doing their work should not prove fatal. Here, the status of the shaft

and the entrance to it, as to its being covered and protected, was wholly dependent upon the exercise of due care in operating the car and the movable block acting upon a pivot, and that, manifestly, was not the condition of safety that was contemplated by the statute."

And in the later case of *Odin Coal Co.* v. *Denman, supra,* the charge was a willful failure to fence the top of the shaft, and also a like failure to furnish a sufficient light at the top of the shaft, as required by section 6 of the Mines and Miners act, and the company sought to relieve itself of the charge of willfulness by showing it had constructed a fence several feet away from the shaft, leaving a space for feed intended for animals in the mine; and as to the charge in regard to the light, it was contended that the company had arranged for a man to hold a lantern to light the men on and off the cage. But neither of these contentions was sustained, and it was there held not error to refuse to allow the president and superintendent to testify that they in good faith intended to comply with the statute. It was there said (p. 420) : "The word 'willful,' employed in pleadings in proceedings of this character, does not import any blameworthy motive, and no issue of intent arises."

These cases are sufficient to show that under the established construction given to the word "willful" in this statute, the questions of the existence or non-existence of good faith or the presence or absence of an intention to comply with the statute on the part of the operator are not involved. In the case at bar the jury have found against appellant on the question of fact as to its willful failure to maintain a sufficient light so that persons could discern the cage and surroundings, and this finding is supported by evidence, and the mere fact that the undisputed evidence shows that appellant maintained an inadequate light at the bottom does not, as a matter of law, show a compliance with the statute. The intent and purpose of this statute is to require the mine owner to provide a light at the bottom of the shaft

of sufficient capacity to enable any person approaching the bottom to clearly discern the cage and the objects in the vicinity. The sump is in the vicinity of the cage, and the light ought to be sufficient to enable one coming to the bottom to see where the sump is. It cannot be said, either as a matter of fact or law, that a small oil torch located a few inches from the bottom of the shaft, giving out a flame one or two inches high, is such a light as the law contemplates shall be maintained.

It is said the smoke from the firing of shots and from the miners' lamps had collected at the bottom of the shaft and thereby caused the place to be temporarily dark. This mine, at the time of the accident, was a new mine. No escapement shaft had been put in, consequently the only way for the smoke to get out of the mine was through the operating shaft. The existence of the smoke at the bottom was a condition necessarily connected with the operation of the mine, and appellant must be required to take this condition into account in providing the light which the statute requires. This circumstance in no way tends to lessen appellant's obligation to comply with the law. If by reason of the smoke a small light was insufficient it was appellant's duty to provide a larger one and thus comply with the law, regardless of whether there was smoke at the bottom of the shaft or not.

Upon the question whether the evidence tends to show that the want of a sufficient light at the bottom of the shaft was the proximate cause of appellee's falling into the sump but little need be said. It is not seriously contended that the injury is not a fair and reasonable result, from the facts and circumstances in proof. Unless he had a suicidal intent it is inconceivable that the appellee would walk into a sump filled with mud and filthy water, especially when he knew the cage was descending or liable to descend upon him. The only reasonable inference is, that when he approached the sump in the dark he stepped into it believing

227—38

he had not gone far enough to turn into the man-way. Had there been sufficient light there, appellee could have seen the sump and the entrance to the man-way, and by turning into the man-way would have been safe from danger.

There was no error in denying appellant's motion to direct a verdict on the first count. So far as the second count is concerned, we do not deem it necessary to elaborate our views.

Appellant argues that since the jury made a separate finding against appellant on both counts, it is necessary to sustain both counts in order to uphold the judgment. We cannot assent to this view. Finding a separate verdict against appellant on each count can have no other or different effect than a general verdict finding the defendant guilty as charged in the declaration. One good count which is sustained by the evidence and upon which the verdict can rest will support the judgment, regardless of the findings on other counts. It is not necessary in the case in hand to hold that the evidence tends to sustain both counts of the declaration, but if this were required we would not be inclined to reverse the judgment, because there is no evidence tending to sustain the second count.

Appellant asks that the judgment be reversed because appellee's counsel, after adverse rulings of the court, asked questions which implied that the appellant was insured in a casualty company, and that the judgment, if one should be rendered, would be paid by such company. Error is usually only assignable on the rulings of the court. The court promptly ruled against appellee's right to inquire into the irrelevant matter suggested by the questions, but the questions were repeated to other witnesses. The conduct of counsel in thus seeking to place before the jury matters not involved in the issue is censurable in the highest degree, and if the amount of the verdict were such as to raise a suspicion in our minds that the jury had been influenced by this misconduct, or if the case were a close one on the facts,

we would not hesitate to reverse the judgment for this reason alone. But since the verdict was rather below the usual amount awarded where the injury has been sustained such as the evidence shows here, and the case is reasonably clear on the facts, there is no reason to suspect that the jury were actuated by prejudice or passion.

· Complaint is made of instructions given at the instance of appellee. This complaint is not wholly without merit, especially as respects instructions numbered 14 and 15, which relate to the subject of damages. These instructions are not accurate. The court gave fifteen instructions for appellee and twenty-six for the appellant. When the whole series of instructions are read together there is no error which requires a reversal of the judgment.

Finding no reversible error in the case the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*