(Nos. 16141-16199.—Judgment affirmed.)

MILES F. LISKA, Defendant in Error, *vs.* THE CHICAGO
RAILWAYS COMPANY *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1925—Rehearing denied December 2, 1925.*

I. NEGLIGENCE—*guardian of a minor may sue in his own name.*
While a minor's suit is properly prosecuted in his name by his next
friend or guardian, under sections 17 and 18 of the Guardian and
Ward act the legally qualified guardian of a minor is authorized
to sue in his own name, by a proper declaration, for personal in-
juries to his ward, as such guardian is the only person who has
authority to receive payment and enter satisfaction·of a judgment
recovered in favor of the minor, and such receipt and satisfaction
are binding upon the minor.

2. SAME—*capacity of plaintiff to sue must be put in issue by
special plea.* The question of the capacity in which the plaintiff
sues can only be put in issue by special plea, and the filing of a
plea of not guilty admits the representative capacity in which the
plaintiff sues, and the question not having been raised in the trial
court cannot be urged for the first time in a court of review.

3. SAME—*when negligence of motorman failing to stop car is
question for jury.* A motorman of a street car is not required to
slacken the usual speed of his car upon seeing a child standing in
the street near the curb, and if he stops the car as soon as pos-
sible after seeing the child start to run across the track his em-
ployer is not chargeable with negligence in the absence of any
claim that the car was not properly equipped with brakes, but where
the evidence is in dispute as to the movements of the child and
the time when the brakes were applied, it is for the jury to deter-
mine, under all the evidence, whether there was negligence.

4. SAME—*what degree of care is required of motorman of street
car when child is in street.* Where a child is about to cross or is
in the street ahead of a street car the motorman is not required to
possess absolute knowledge of what the child proposes to do, but
he must exercise ordinary care to ascertain the child's apparent
purpose, and the question whether he fails to exercise such care is
to be determined from a preponderance of the evidence under the
instructions of the court.

5. SAME—*when an instruction is not improper as reciting facts.*
An instruction based upon a particular count and which recites the
allegations of said count is not improper because, in using the
word "that" before each allegation, the jury might understand that
the court considered the facts established, where the instruction

concludes with the statement that it is for the jury to determine whether the plaintiff has proved his case as alleged in the count.

6. SAME—*when an instruction is not improper in using words "could" and "might."* An instruction that if a motorman of a street car, by the exercise of ordinary care, "could" have known of a child's intention to cross the track then it was his duty to exercise such care, and that it was his duty to exercise ordinary care to keep a proper lookout for the safety of persons, including children, who "might" attempt to cross the track, is not improper in the use of the words quoted, as such instruction does not require the motorman to anticipate the child's possible movements.

7. SAME—*plaintiff is not bound to prove each count—instruction.* Different acts of negligence may be charged in several counts of a declaration, but the plaintiff is not bound to prove each count in order to entitle him to a verdict, provided one count states a cause of action and there is sufficient evidence to sustain the allegations of that count; and where there are other counts which have not been withdrawn and upon which no instructions are based, an instruction authorizing a recovery upon proof of the "plaintiff's case" is not improper, even though not qualified by any reference to particular allegations.

8. CONSTITUTIONAL LAW—*what constitutes right of trial by jury.* The right of trial by jury, which is the common law right as enjoyed at the time of the adoption of the present constitution, is the right to have the facts in controversy determined, under the direction and superintendence of a judge, by twelve impartial jurors who possess the qualifications and are selected in the manner prescribed by law, and whose verdict is unanimous and conclusive, subject to the right of the court, on proper grounds, to set the verdict aside and grant a new trial.

9. SAME—*right of trial by jury does not include right to review of facts on appeal or writ of error.* The provision of the Practice act that judgments of the Appellate Court shall be final as to all matters of fact in controversy in actions at law is not unconstitutional, as the right of trial by jury does not include the right to a review of the facts in the Supreme Court, and the right of the Appellate Court to review the evidence and grant a new trial is not a constitutional right but is statutory and is subject to the control of the legislature.

10. APPEALS AND ERRORS—*when action cannot be reviewed by direct writ of error in Supreme Court.* The judgment of the Appellate Court in an action for negligence cannot be reviewed in the Supreme Court by direct writ of error but only by writ of *certiorari* or appeal under section 122 of the Practice act, which limits the consideration of the Supreme Court to questions of law, only.

11. SAME—*when Appellate Court's judgment is final as to questions of fact.* In an action to recover damages for personal injuries every controverted question of fact is determined by the judgment of the Appellate Court which affirms the trial court's judgment.

12. SAME—*when a judgment is not excessive.* A judgment for $17,000 for loss of a child's leg is not so excessive as to warrant interference on the part of the Supreme Court, where it has been affirmed by the Appellate Court.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

BROWN, FOX & BLUMBERG, (JOHN R. GUILLIAMS, CHARLES LEROY BROWN, FRANKLIN B. HUSSEY, FRANK L. KRIETE, and JOSEPH D. RYAN, of counsel,) for plaintiffs in error.

FINN & MILLER, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Miles F. Liska, guardian of the estate of John Liska, a minor, brought an action of trespass on the case against the Chicago Railways Company, the Chicago City Railway Company, the Calumet and South Chicago Railway Company and the Southern Street Railway Company, operating under the name and style of Chicago Surface Lines, to recover damages for personal injuries suffered by John Liska, aged three years and five months. The declaration consisted of four counts, each of which charged negligent operation of one of defendants' street cars and that the injuries resulted from such negligence. The plea was not guilty. A jury trial resulted in a verdict of $25,000 for the plaintiff. There was a *remittitur* of $8000 and judgment was entered for $17,000. On appeal to the Appellate

Court for the First District the judgment was affirmed. On petition of the street railway companies, in No. 16141 a writ of *certiorari* was awarded, and in No. 16199 the same companies, asserting the invalidity of certain statutes, sued out a writ of error. For the purpose of this review both causes have been consolidated.

The Chicago Railways Company operates a double-track street railway on Kedzie avenue, a street running north and south in the city of Chicago. On November 20, 1920, John Liska lived with his parents at 2448 West Twenty-fifth street, about 100 feet west of Kedzie avenue. At the southeast corner of these two streets there was a vacant lot with a frontage of 72 feet on Kedzie avenue. Adjoining this lot on the south was a candy store, facing west on Kedzie avenue. At about noon on the day mentioned, Liska, the child, without his mother's knowledge, went to the candy store, and, after leaving the store, in attempting to cross Kedzie avenue in a northwesterly direction toward his home suffered the injuries of which complaint is made.

Henry Rathman, an electrician, who was driving his automobile south in Kedzie avenue, testified that when he was about 150 feet north of Twenty-fifth street he noticed a small boy standing at the east curbstone of Kedzie avenue, about 35 feet north of the candy store; that the boy started across the street in a northwesterly direction at a gait somewhat faster than a walk when a street car was about 125 feet to the south; that when the boy approached the west rail of the north-bound track he stopped for an instant; that the witness was then about to cross Twenty-fifth street and blew his automobile horn and applied the brakes; that the boy turned around and started back, and when he reached the east rail the street car knocked him down and he rolled under the car, and the witness stopped his automobile, ran around the rear end of the street car, picked up the boy and took him to a hospital. Rathman further testified that he did not hear the bell rung; that

when the boy stopped in the north-bound track the street car was 20 or 25 feet from him; that the boy was about 35 feet south of Twenty-fifth street when he was struck; that the car went about 15 feet after striking him, and that the car stopped about 15 or 20 feet south of Twenty-fifth street.

William Sloan, who rode with Rathman in the latter's automobile, testified that he saw the boy leave the candy store, stop for a moment at the curb opposite the center of the vacant lot and then start to cross the street when the street car was from 125 to 150 feet to the south; that when the boy reached the center of the north-bound track he turned and saw the street car, then about 35 or 40 feet from him; that he started back and was struck by the street car, and that Rathman and the witness took the boy to the hospital. On cross-examination he testified that when the boy left the candy store the street car was from 75 to 100 feet south of the store; that the boy proceeded about 35 feet on the sidewalk, and when he descended from the curb into the street the car was about 35 feet south of him; that the boy was going from six to eight miles an hour and that the speed of the car was not reduced until it was within 15 feet of the boy. He also testified that when the boy reached the west rail of the north-bound track and turned around, the street car was about 50 feet to the south.

Edward Anderson, a passenger on the street car, who stood behind and to the left of the motorman, testified that he saw the boy between the curbstone and the east rail, opposite the center of the vacant lot; that the street car then was opposite the center of the candy store, or about 45 feet from the boy; that the boy ran out and stopped in the center of the north-bound track; that the motorman shut off the power and when 10 or 15 feet from the boy applied the brakes; that the fender of the car was up, and when the car came to a stop its front end was about 40 feet south of Twenty-fifth street. He testified on cross-examination that

when he first discovered the boy the street car was running eight or ten miles an hour; that the candy store was 75 or 80 feet south of Twenty-fifth street; that when he first saw the boy the latter was about 45 feet from the candy store, going in a westerly direction toward the street car track; that the car was then 50 or 55 feet from the boy, who was going faster than a child's walk; that the motorman was looking out of the window and did not talk to anybody; that he turned off the power and sounded his gong, and that the car ran 15 to 20 feet after striking the boy.

Frank Chison, a passenger sitting on the left side of the front platform of the car, testified that he first saw the boy standing in the middle of the north-bound track, about 10 or 15 feet ahead of the car, facing northwest; that at the same time he felt the application of the brakes; that after striking the boy the car ran about its length and stopped 10 feet south of Twenty-fifth street. Upon cross-examination he testified that the car was going about ten miles an hour, and that on account of the dashboard he could not see the car strike the boy.

Andrew Chison, also a passenger and seated to the right of his brother, Frank, corroborated the latter's testimony concerning the motorman's attempt to stop the car and the point at which it was stopped.

From other testimony offered in behalf of defendant in error it appeared that the boy's right foot was crushed one or two inches above the ankle; that the leg was amputated about five inches below the knee; that at the time of the trial the stump had not entirely healed, and that to enable the boy to use an artificial leg a further amputation of one and one-half inches of the leg would be advisable.

The foregoing witnesses were called by the defendant in error. On behalf of the plaintiffs in error, John F. Regan, the motorman, testified that the car he operated was 48 to 50 feet long, weighed eighteen or twenty tons and was equipped with air-brakes and controller; that Kedzie

avenue at the point in question was paved, and the distance
from the curb to the outer rail was about 12 or 13 feet;
that the day was clear and the car attained a speed of twelve
miles an hour at the center of the block between Twenty-
fifth and Twenty-sixth streets; that he had a clear and un-
obstructed view of the street; that when he first saw the
boy he was alone, standing in the gutter at the east curb,
about five feet north of the north wall of the candy store,
playing with something; that when the street car was about
35 feet from him he suddenly turned and ran west at about
six miles an hour; that when the boy started the witness
rang the gong, shut off the power and applied the brakes
and sand; that the boy ran into the northeast corner of
the car and never reached the outer rail; that the speed of
the car was six miles an hour when the boy came in contact
with it and that it ran about 25 feet after he was struck;
that the stopping appliances of the car were in good work-
ing order; that he stopped the car in 60 feet, and that
the car could not have been brought to a stop in a shorter
distance.

Fred Laugner, the conductor, testified that he was on
the rear platform of the car; that after leaving Twenty-
sixth street, at which a stop had been made, the car was
running twelve or thirteen miles per hour; that the air-
brakes were suddenly applied and the car came to a stop
in about 50 feet, and that the rear end of the car, after it
stopped, was opposite the door of the candy store.

In the trial and Appellate Courts the defendant in er-
ror insisted that the motorman negligently operated the car
and that in consequence the child was injured. The plain-
tiffs in error, on the contrary, contended that the street car
was not negligently operated, but that the boy was injured
because he ran from the curb toward the track so suddenly
that the motorman was unable to prevent the car striking
him. The errors now assigned and argued by the plaintiffs
in error are: (1) That the guardian had no right to sue

and that the judgment is therefore void; (2) that an erroneous test for the determination of liability was applied by the superior and Appellate Courts; (3) that erroneous instructions were given; (4) that the trial court erred in submitting to the jury the counts based on the failure to ring a gong or bell; (5) that the statutes denying the right of a review of questions of fact in jury cases by this court are unconstitutional, because they impair the right of trial by jury as enjoyed at the time of the adoption of the present constitution; (6) that the judgment is contrary to the manifest weight of the evidence; and (7) that the damages are excessive.

*First*—It is insisted that an action for personal injuries to a minor must be prosecuted in his name by his next friend or guardian as a representative; that the guardian himself has no right to sue as plaintiff, and that the minor is not bound by the judgment unless he is made a party to the action. The declaration in the instant case begins: "Now comes Miles F. Liska, guardian of the estate of John Liska, a minor, plaintiff." Throughout the declaration John Liska, the minor, is referred to as the "plaintiff's ward," and from the allegations of the declaration it is clear that the suit is brought in the interest of the minor. Section 17 of "An act in regard to guardians and wards" (Cahill's Stat. 1923, p. 1857,) provides that the guardian shall "demand and sue for, and receive in his own name as guardian, all personal property of and demands due the ward;" and the 18th section of the same act authorizes the guardian to "appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose, as guardian or next friend; but nothing contained in this act shall impair or affect the power of any court * * * to appoint or allow any person as next friend for a minor to commence, prosecute or defend any suit in his behalf: *Provided,* that any suit or proceeding may be commenced and prosecuted by any minor by his next friend,

318—37

without any previous authority or appointment by the court, on such next friend entering into bond for costs, and filing the same in the court in which * * * such suit or proceeding is instituted." While a minor's suit is properly prosecuted in his name by his next friend or guardian, yet it cannot be said that, under the broad language of the statute and the allegations of the declaration, the instant suit is not maintainable. The legally qualified guardian is the only person who has authority to receive payment and enter satisfaction of a judgment recovered in favor of a minor. (*Paskewie* v. *East St. Louis and Suburban Railway Co.* 281 Ill. 385.) Such receipt and satisfaction are binding upon the minor.

Complaint is also made that the declaration fails properly to show the appointment of the guardian. The question of the capacity in which the plaintiff sues can only be put in issue by a special plea. (*Chicago and Alton Railroad Co.* v. *Smith,* 180 Ill. 453; *Hughes* v. *Richter,* 161 id. 409; *Union Railway and Transit Co.* v. *Shacklet,* 119 id. 232.) The filing of the plea of not guilty admits the representative capacity in which the plaintiff sues. (*Hughes* v. *Richter, supra.*) If the plaintiffs in error deemed the allegations of the declaration defective in that respect the question could have been raised in the trial court by an appropriate pleading. Not having been so raised, the objection is waived and cannot be urged for the first time in a court of review. *Chicago Legal News Co.* v. *Browne,* 103 Ill. 317; *Pennsylvania Co.* v. *Chapman,* 220 id. 428.

*Second*—The plaintiffs in error assert that the evidence, when analyzed, clearly shows that the motorman stopped the car promptly after the peril arose, and that as a matter of law there was no negligence on their part. A motorman is not required to slacken the usual speed of his car upon seeing a child standing in the street near the curb, and if he stops the car as soon as possible after seeing the child start to run across the track his employer is not chargeable

with negligence in the absence of any claim that the car was not properly equipped with brakes. (*Rack* v. *Chicago City Railway Co.* 173 Ill. 289.) This rule was invoked by the plaintiffs in error in their defense of the case. The testimony, however, concerning the movements of the boy and the time when the motorman first applied the brakes is in dispute. There was testimony that the motorman shut off the power when he discovered the boy in the track but that he delayed to apply the brakes until within 10 or 15 feet of the boy. There was also testimony that the boy started to run from the curb toward the track when the car was 125 feet away and that the motorman's view of him was unobstructed. It was the province of the jury to determine, upon all the evidence, whether there was negligence. We cannot say, as a matter of law, that there was no negligence. *Perryman* v. *Chicago City Railway Co.* 242 Ill. 269; *Chicago and Joliet Railway Co.* v. *Wanic,* 230 id. 530; *Chicago City Railway Co.* v. *Nelson,* 215 id. 436; *Chicago City Railway Co.* v. *Tuohy,* 196 id. 410.

*Third*—Complaint is also made of the plaintiff's fourth, fifth, eighth and eleventh instructions. The fourth instruction recited the allegations of the first count of the declaration, that the defendants by their motorman operated the street car; that the plaintiff's ward, a minor three years of age, was passing across the street; that as the street car approached the point where the plaintiff's ward was crossing the street, the motorman knew, or by the exercise of ordinary care could have known in time to avoid injury, that the plaintiff's ward was about to cross the track or was at or near the track in a position of danger; that it was the motorman's duty to exercise ordinary care to avoid injury; that he failed to exercise such care; that such failure was negligence, and that as a proximate result of such negligence the street car ran into the plaintiff's ward and caused the injury. The instruction concluded with the statement that if the jury found from a preponderance of the evidence,

under the instructions of the court, that the plaintiff had proved his case as alleged in the first count, then the jury should find the defendants guilty. It is argued that the instruction required the motorman to exercise a greater power of discernment than the law demanded. The instruction did not require the motorman to possess absolute knowledge of what the child proposed to do. Such knowledge would be impossible, for the child might change its course. All that the instruction required of the motorman was the exercise of ordinary care to ascertain the child's apparent purpose. The law demands as much. *Chicago City Railway Co.* v. *Tuohy, supra; Perryman* v. *Chicago City Railway Co. supra.*

It is also argued that the language of the fourth instruction is ambiguous in its statement of the motorman's duty to exercise ordinary care to avoid injury. The instruction was based upon the first count and correctly announced a general rule of law. The question whether the motorman failed to exercise ordinary care was to be determined, as the instruction stated, from a preponderance of the evidence under the instructions of the court.

Each clause in the fourth instruction's recital of the allegations of the first count begins with the connective "that," and it is objected that the jury would be apt to understand that in the court's opinion the propositions stated in these clauses were facts which had been established by the evidence. These clauses merely recited the allegations of the first count of the declaration and could not be considered as a statement of facts in view of the concluding sentence of the instruction, which expressly stated that it was the jury's province to determine whether the plaintiff had proved his case as alleged in the count.

The fifth instruction was based upon the second count of the declaration, which charged that it was the duty of the motorman, as the street car progressed, to exercise ordinary care to keep a proper lookout for the safety of per-

sons, including children, who might lawfully attempt to cross the track. The allegations of this count were recited in the fifth instruction, and the concluding sentence of the instruction was the same as that of the fourth. The objections urged to the fourth instruction are also made to the fifth, and for the same reasons there was no error in giving the latter.

Complaint is also made of the use of the word "could" in the fourth instruction, which informed the jury that if the motorman knew, or by the exercise of ordinary care could have known in time to have avoided the injury, that the boy was about to cross the track or was at or near the track in a position of danger, then it was the motorman's duty to exercise ordinary care to do so; and of the word "might" in the fifth instruction, which states that it was the duty of the motorman to exercise ordinary care to keep a proper lookout for the safety of persons, including children, who might lawfully attempt to cross the track. These instructions, it is asserted, required the motorman to anticipate mere possibilities,—one, that a child would rush from the curb to the track; and the other, that a person or child in a position of safety might change to one of danger. Neither instruction imposed upon the motorman the duty to anticipate a possibility. Both required merely the exercise of ordinary care by the motorman to ascertain the child's evident or apparent purpose. When the whole of each of these instructions is read the jury could not have been misled.

Similar criticism is made of the eighth and eleventh instructions given at the plaintiff's request. The eighth instruction informed the jury that the motorman in control of a street car operated upon a public highway is required to exercise ordinary care for the safety of persons, including children, who may lawfully attempt to cross the highway, and that ordinary care means that degree of care which an ordinarily prudent person, under the same or similar circumstances, would have exercised both before and at the

time of the injury. By the eleventh instruction the jury was told that if it found from a preponderance of the evidence, under the court's instructions, that the motorman, by using his faculties with ordinary and reasonable care in looking out for danger, could have avoided the accident, and that he negligently failed to do so, and that such ngeligence on his part, if shown by the evidence, was the proximate cause of the injury, then the defendants should be found guilty, provided such negligence was alleged in the declaration or some count thereof, as explained in the instructions and proved by a preponderance of the evidence. Neither of these instructions required the motorman to anticipate the child's possible movements. What would or could have been discovered by the exercise of ordinary care is by these instructions the extent of the motorman's duty. The trial court did not err in giving either of them. (*Flynn* v. *Chicago City Railway Co.* 250 Ill. 460.) Moreover, by instructions given at the request of the plaintiffs in error, particularly Nos. 19 and 20, the jury was fully instructed with reference to the motorman's duty under the circumstances.

*Fourth*—The third and fourth counts of the declaration charged the plaintiffs in error with the failure to ring a bell or sound a warning. These counts were not withdrawn, nor were any instructions based upon them given to the jury. The counts to which reference was made in the instructions were those which were recited or explained in the instructions. There was no reference in any instruction to the failure to ring a bell or sound a warning. Nor does it appear that the jury had any information concerning the allegations of the third or fourth count. In the absence of an affirmative showing it will not be presumed that the jury had any knowledge of those allegations. *Lerette* v. *Director General of Railroads,* 306 Ill. 348.

But it is argued that unless the jury knew of the contents of the declaration, which necessarily included the third and fourth counts, it was improper to give the second

and third instructions requested by defendant in error, because those instructions authorized a recovery on proof of the plaintiff's case, which, it is asserted, was based upon and extended to every count of the declaration. The second instruction concerned the burden of proof and the third the quantum of proof required. Neither instruction purported to state the issues. Different acts of negligence may be charged in several counts of a declaration, but the plaintiff is not bound to prove each count in order to entitle him to a verdict. (*Scott* v. *Parlin & Orendorff Co.* 245 Ill. 460; *Colesar* v. *Star Coal Co.* 255 id. 532.) The minimum of allegations in a declaration which state a cause of action, and the minimum of evidence to sustain those allegations, are sufficient to constitute the plaintiff's case. The use of the words "plaintiff's case" in an instruction, even though not qualified by any reference to the allegations of the declaration, is not improper. *Chicago City Railway Co.* v. *Nelson, supra.*

*Fifth*—The right of trial by jury constitutionally guaranteed is the right as it existed at common law and as it was enjoyed at the time of the adoption of the present constitution. It is the right to have the facts in controversy determined, under the direction and superintendence of a judge, by twelve impartial jurors who possess the qualifications and are selected in the manner prescribed by law. The jury's verdict must be unanimous, and it is conclusive, subject to the right of the judge to set it aside if in his opinion it is against the law or the evidence, and for that reason to grant a new trial. The provisions of the Practice act that judgments of the Appellate Court shall be final as to all matters of fact in controversy in actions at law are not unconstitutional because the right of trial by jury guaranteed by the constitution does not include the right to a review of the facts by this court. The right of the Appellate Court to review the evidence and to grant a new trial is not a constitutional right but is statutory and is

subject to the control of the General Assembly. (*Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609.) Hence the contention of the plaintiffs in error that sections 121 and 122 of the Practice act, to the extent that they deny the right of a review of questions of fact in jury cases by this court, are unconstitutional cannot be sustained.

But it is argued that section 122 of the Practice act, which limits the re-examination by this court of cases brought to it from the Appellate Courts by appeal or writ of *certiorari* to questions of law, only, has no application to writs of error. There was no ground in this case for a direct writ of error from this court to review the Appellate Court's judgment. The constitutional question sought to be raised was not debatable. This case could only be brought to this court by writ of *certiorari,* and since it is here by that process it is governed by section 122 of the Practice act.

*Sixth*—The contention that the judgment is contrary to the manifest weight of the evidence is not, in view of what has been said, open to consideration here. (Practice act, secs. 121, 122.) In an action to recover damages for personal injuries every controverted question of fact is determined by the judgment of the Appellate Court which affirms the trial court's judgment. *Mattice* v. *Klawans,* 312 Ill. 299; *Schubert* v. *Patera,* 310 id. 419.

*Seventh*—The boy's leg was amputated below the knee and his handicap through life is a serious one. Obviously, his damages are not susceptible of exact computation. Courts and juries will differ in fixing the amount, but we cannot say, as a matter of law, that the judgment for $17,000 is so excessive as to warrant interference on our part.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*