## FIREMEN'S INS. CO. v. FOLLETT et al.*
### No. 5080.

Circuit Court of Appeals, Seventh Circuit.
June 21, 1934.

Rehearing Denied July 16, 1934.

Frederick D. Silber, Donald N. Clausen, and Herbert W. Hirsh, all of Chicago, Ill., for appellant.

Otto M. Hamer and Chester D. Kern, both of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellant seeks the reversal of a judgment for $6,053.28 in an action of assumpsit upon a fire insurance policy for the reasons: (1) The court admitted certain incompetent documentary evidence. (2) It refused to direct a verdict in favor of appellant. (3) It refused to charge the jury as requested

*Writ of certiorari denied 55 S. Ct. 209, 79 L. Ed. ——.

by appellant. (4) At least one count was not supported by the evidence.

Appellee Follett is the owner of adjoining buildings at 1506–1508 and 1510–1512 West Lake street in Chicago. Appellee Bennett is the trustee in a certain mortgage on both buildings. On the first floor of 1506–1508 were two flats, in one of which a plate glass window had been installed in September or October, 1927, and the tenant used the front part of it as a restaurant. R. A. Napier & Co., Chicago agents of appellant, had carried the insurance on the double building in two policies. These policies expired December 31, 1927. On December 29, 1927, Napier & Co. wrote Mead & Coe, who were handling the matter for Bennett, the following letter:

"In reply to your letter of the 17th in regard to the increase in rate on the new policies to $1.425 from a rate of $.825 under the old policies, we wish to state that these policies originally covered 1506–1508 West Lake Street which takes the $.825 rate. On August 1, 1926, a form was substituted making the policies cover 1506–1512 West Lake Street. The building at 1510–1512 West Lake street was rated by the Chicago Board of Underwriters April 26, 1922 with a rate of $.57 for one year or $1.425 for the three year term on account of the garage exposure. Our policies being written to cover the two buildings 1506–1508 and 1510–1512 with the average clause it was necessary for us to use the highest rate of $1.425.

"If the assured wishes to take advantage of the lower rate it will be necessary to write up the insurance putting a specified amount on each building. The rate on 1506–1508 is $.825 for the three year term and on 1510–1512 $1.425 for the three year term."

Six days later the policy sued upon, Firemen's Policy No. A5900, was issued and delivered to Mead & Coe for Bennett. It is a standard policy, covering Nos. 1506–1508, calling for a premium of $50, at the rate of $.80. The owner was insured against loss or damage by fire to the amount of $6,250, for three years, beginning December 31, 1927. The policy describes the property as a four-story and basement brick flat building, and contains the following provision: "Permission granted for such use of the premises as is usual and incidental to the occupancy of dwellings, flats, apartments, and private rooming and private boarding houses as conducted therein, and to keep and use all articles and materials usual and incidental to such occupancies in such quantities as the exigencies of the occupancies require, but the housing or storage of an automobile is prohibited unless a special permit is attached hereto."

In answering a letter of Napier & Co. relative to premiums due on the new policies, Mead & Coe, on February 25, 1928, wrote Napier & Co.: "In regard to the Follett premiums, wish to state that we wrote you on February 3rd, in regard to a reinspection of this building, but so far have not been favored with a response to this letter. When we receive a response, will make further attempts to collect the premiums due under these policies."

On March 6, 1928, Napier & Co. advised Mead & Coe, in a letter which was admitted in evidence over the objection of appellant, that in accordance with the request of appellees they had made a reinspection of 1510–1512 West Lake street; that the building was rated at $.57; that the reason for the rating was on account of the two stores in the building and garage exposure; *that if the Board made a reinspection the rate would be increased to $.80 per $100.*

A fire occurred in the insured building on February 9, 1929. Follett was out of the city and did not return until March 6th. On February 28, 1929, however, appellant, having learned through other sources that the fire had occurred, sent its adjuster, one Feiler, to the building. Feiler employed a contractor to make an estimate of the loss. On his return to Chicago, Follett employed Herbst & Co. to represent him and make an estimate of the damage. Herbst & Co. employed a contractor to make an estimate of the loss and damage, which was made in the amount of $6,799.96. On March 30, 1929, Follett and appellant entered into a non-waiver agreement wherein it was agreed that any action taken by the insurer in investigating the amount of loss "shall not waive or invalidate any of the conditions of the policy * * * held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement."

Feiler and Herbst met at the property April 5, 1929, and checked the losses. On the 5th or 6th of April they met at Feiler's office and agreed that the actual loss and damage to the property was $6,053.28. On May 22, 1929, Feiler sent a letter to Herbst, inclosing proofs of loss, which described the building as occupied "by tenants for store and dwelling purposes," and recited the loss and damage as $6,053.28, but stated: "In-

sured claims and will accept in full satisfaction and compromise-settlement under this policy the sum of $1,659.34." Appellees refused to accept the amount or to execute the proof of loss tendered.

The declaration contains three counts; the first declaring upon the policy, the second declaring upon an account stated, and the third being the common counts. At the conclusion of appellees' evidence, appellant moved for a directed verdict, which was denied. At the conclusion of all of the evidence, appellant moved to instruct the jury: (a) To find the issues in favor of defendant and against plaintiffs. (b) "In the alternative, in the event that the defendant's motion for a directed verdict is overruled, that the case may be permitted to go to the jury for a decision on the issues of fact involved herein."

Appellant contends there is little or no evidence to sustain the second count, regardless of the fact there may be evidence tending to support the first and third, and, therefore, the judgment should be reversed and the cause remanded for a new trial.

■ We feel there was some evidence tending to support the second count, although limited in its character, and the jury were the judges of its weight. However, assuming that there was no evidence, as contended by appellant, the verdict in this case was general, the jury finding the issues for the plaintiff.

■ The rule in Illinois is thoroughly established by a long line of decisions dating back as far as 1845 (Anderson et al. v. Semple et al., 2 Gilman, 455, 458) that where there are several counts in the declaration, if there is one good count sustained by the evidence, where a general verdict is returned by the jury, the verdict will not be set aside by reason of the unsustained counts being permitted to go to the jury. Scott v. Parlin & Orendorff, 245 Ill. 460, 92 N. E. 318, 321; Chicago City Ry. Co. v. Carroll, 206 Ill. 318, 68 N. E. 1087; Chicago, Wilmington & Vermilion Coal Co. v. Moran, 210 Ill. 9, 71 N. E. 38; Olson v. Kelly Coal Co., 236 Ill. 502, 86 N. E. 88, 89.

In the latter case the Illinois Supreme Court said: "It is settled in this state that one good count in a declaration which is supported by the evidence will sustain a verdict and judgment, although other counts in the declaration may not be supported by the evidence."

In discussing the last three cases in Scott v. Parlin & Orendorff, supra, the court said:

"In these cases the court clearly was not attempting to base the decisions on the seventy-first or seventy-eighth section of the practice act, for no question appears to have been raised in any of them as to the sufficiency of any count. The direct question was raised that at least some of the counts were not supported by any evidence, and on that ground the trial court was requested to take them from the jury. These cases are supported, in reason, by the following cases, although the question was not there so directly involved. Madison Coal Co. v. Hayes, 215 Ill. 625, 74 N. E. 755; Eldorado Coal & Coke Co. v. Swan, 227 Ill. 586, 81 N. E. 691; Chicago & Alton Railroad Co. v. Redmond, 171 Ill. 347, 49 N. E. 541; Pennsylvania Co. v. Backes, 133 Ill. 255, 24 N. E. 563; Klofski v. Railroad Supply Co., 235 Ill. 146, 85 N. E. 274."

Appellant relies upon Wilmington Star Mining Co. v. Fulton, 205 U. S. 60, 27 S. Ct. 412, 419, 51 L. Ed. 708. In that case the fifth, seventh, and eighth assignments of error were based upon the incorrectness of the ruling of the trial court in denying motions to strike out counts 2, 3, 5, and 6, of the declaration; no evidence having been introduced upon the trial to sustain them. No such motion was made in the present case. The motion at the close of all the evidence made by appellant was in the alternative "to instruct the jury to find the issues in favor of defendant," or, "that the case may be permitted to go to the jury." The motion made in the Wilmington Case was in compliance with the right given a defendant by analogy to section 71, c. 110, Smith-Hurd Rev. St. Ill. 1933; par. 71, c. 110, Cahill's Rev. St. Ill. Appendix (1933). So there really was a different question considered in the Wilmington Case from the one here presented. There the Supreme Court found that there was no evidence offered to sustain those particular counts, and said: "Under this condition of things we find it impossible to say that prejudicial error did not result. * * * And, *of course, in a case like the one we are considering, we cannot maintain the verdict,* as might be done in a criminal case, upon a general verdict of guilty upon all the counts of an indictment. * * * Nor does section 57 of the Illinois practice act, chapter 110, Rev. Stat. Illinois, support the contention that *errors of the character of those we have just been considering* must be treated as not prejudicial."

An attempt was made to have section 57 (Smith-Hurd Rev. St. Ill. 1933, c. 110, §

78; section 78, c. 110, Cahill's Illinois Rev. St. 1933, Appendix) construed to include such a case as was there presented, and the court held that it did not.

Inasmuch as the ruling of the United States Supreme Court apparently is at variance with the then established federal rule (Bond et al. v. Dustin, 112 U. S. 604, 5 S. Ct. 296, 297, 28 L. Ed. 835) and also apparently at variance with the long-established rule in Illinois, that case must be held to be limited to the particular facts involved in the action then under consideration. The Wilmington Case was decided January 7, 1907. The ruling of the Illinois Supreme Court in Scott v. Parlin & Orendorff, supra, was recognized as early as 1845, and since the Scott Case has been applied in Collins v. Sanitary Dist. of Chicago, 270 Ill. 108, 111, 110 N. E. 318; Colesar v. Star Coal Co., 255 Ill. 532, 99 N. E. 709; Liska v. Chicago Rys. Co., 318 Ill. 570, 149 N. E. 469.

In the Wilmington Case the Supreme Court had been discussing the effect of section 78 as to the meaning of the expression "any defective count" as used therein, stating it did not apply to counts that were *vitally* defective, but only those *not vitally* defective, upon authority of Chicago v. Lonergan, 196 Ill. 518, 63 N. E. 1018, and Consolidated Coal Co. v. Scheiber, 167 Ill. 539, 47 N. E. 1052, 1053. In the Lonergan Case the court considered sections 71 and 78 and held that innate substantive defects are not cured by verdict, but a verdict would cure defects not vital. The same question was under discussion in Consolidated Coal Co. v. Scheiber, supra. In that case the court said: "From the view we take of the case, it is unnecessary to examine the other counts of the declaration, for if there is one good count to which the evidence was applicable, and which is sufficient to sustain the judgment, the error of the court, if any, in refusing to instruct the jury to disregard the other counts, becomes harmless."

■ The Supreme Court of the United States, in the Wilmington Case, was not attempting to lay down a new rule to supersede the well-established rule in Illinois that where there is one good count sustained by the evidence and a general verdict, the court will not reverse a judgment entered thereon, but it held that in that case the failure of the court to allow a defendant's motion before verdict to strike from the record certain counts, to establish which no proof had been offered, was prejudicial error. Had a similar motion been made in this case as to count 2 and no evidence offered to sustain it, and an adverse ruling upon the motion, then a different situation would have been presented. And yet, the only substantial question raised in this appeal is whether or not there was any proof tending to support the claim that there was an account stated between the parties. Assuming, but not holding, that there was not, there would still be no question but that appellant wrote the policy in question; that during the time it was in force there was a fire and the insured sustained damages; that the special defenses interposed by the insurer are not sustained, so that now the substantial rights of the parties would not be affected whether there was an account stated or not. In the light of title 28, § 391, USCA (Judicial Code, § 269, as amended February 26, 1919, 40 Stat. 1181), the question will be disregarded.

■ The special defenses interposed by appellant on the alleged failure to file proof of loss, send prompt notice of the fire to the insurer, and that there was a restaurant in the property, were all submitted to the jury and the general verdict in favor of appellee properly disposed of them adversely to appellant.

■ As to the documentary evidence admitted upon the trial: The letters are concerning the issues in question here and show that the present policy was merely a renewal of the former policy issued by the same company upon the same premises, and that no formal application was made by appellee for a policy in which he made representations in writing, or otherwise, as to the character of the property upon which he sought a renewal of the insurance policy. The insurer was invited to make an inspection of the premises and obtain such information as it desired as to the character of the risk it was taking. The letters also tend to show that the premium which would be charged on this building, if it contained stores, would be at the rate of $.80 per $100, which is the precise rate which was in fact charged for the insurance in question. It was contended by appellant that Follett concealed the fact that the insured property was being used as a restaurant. The letters complained of were properly admitted to controvert that statement.

■ Appellant's third assignment of error is based upon the refusal of the trial court to charge the jury, as appellant requested, that they might find the account had been stated between the parties in the sum of $1,659.34. The whole argument of appellant in this respect, is based upon the 80 per cent. coinsur-

ance clause which, admittedly, was not a part of the contract. There is no evidence in the record upon which a jury could find that Follett, or any one authorized to speak for him, ever agreed to the application of the 80 per cent. coinsurance clause, and the court properly refused to charge the jury that it might so find.

The judgment is affirmed.